# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42296-2014

| | | |
|---|---|---|
| WALCO, INC., an Idaho Corporation, | ) | |
| | ) | Moscow, August 2015 Term |
| Plaintiff-Appellant, | ) | |
| | ) | 2015 Opinion No. 91 |
| v. | ) | |
| | ) | Filed: September 25, 2015 |
| COUNTY OF IDAHO, a political subdivision | ) | |
| of the State of Idaho, and SIMMONS | ) | Stephen W. Kenyon, Clerk |
| SANITATION SERVICE, INC., an Idaho | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Idaho County. Hon. John R. Stegner, District Judge.

The judgment of the district court is affirmed.

Dennis M. Charney, Charney & Associates, Eagle, argued for appellant.

David R. Risley, Risley Law Office, PLLC, Lewiston, argued for respondent Simmons Sanitation Service, Inc.

Joshua D. McKarcher, Clements, Brown & McNichols, PA, Lewiston, argued for respondent Idaho County.

EISMANN, Justice.

This is an appeal out of Idaho County from a judgment dismissing an action claiming that the Defendants misappropriated the Plaintiff's trade secrets in connection with the process to obtain solid waste disposal services within the county. We affirm the judgment of the district court.

## I.
## Factual Background.

For many years, Idaho County had contracted for solid waste disposal services with Walco, Inc., (Walco) and Simmons Sanitation Service, Inc., (Simmons Sanitation), with each entity covering a different portion of the county. In 2002, the County entered into a contract with each entity for a term beginning on January 1, 2003, and terminating ten years from that date. In 2006, the County and Walco agreed to a modification of their contract.

In July 2012, the County entered into a contract with Simmons Sanitation for another ten-year term beginning on January 1, 2013. However, the County and Walco could not agree upon the terms of another ten-year contract commencing on January 1, 2013. By letter dated June 7, 2012, Walco's counsel informed the County that Walco would not accept the terms proposed by the County and suggested, "given the fact that this contract has not been bid for more than forty (40) years, that the contract should go out for bid."

The County decided not to solicit bids, but instead to solicit proposals for a contract to continue providing solid waste disposal services to that part of the county being served by Walco.[1] On September 11, 2012, the County approved publication of a request for proposals with a response deadline of October 12, 2012. The request for proposals included a proposed contract that stated that the County would pay the contractor a base rate of $60,823.35 per month.

On October 12, 2012, the County Recorder received two envelopes containing responses to the request for proposals. One was from Walco and the other was from Simmons Sanitation. On October 15, 2012, the proposals were opened at a public meeting of the county commissioners. A representative from Walco was at the meeting, but no representative of Simmons Sanitation attended. Commissioner Brandt opened the envelope submitted by Simmons Sanitation and announced its proposed monthly base rate of $77,202.00. He then opened the envelope submitted by Walco and announced its proposed monthly base rate of $87,000.00 per month. The clerk made copies of the two proposals, and the Commissioners reviewed them. After they reviewed the proposals, they had a short discussion with the representative from Walco.

The Commissioners again discussed the proposals at public meetings held on October 16 and 23, 2012. Representatives from both Walco and Simmons Sanitation attended both of those

---

[1] The County could award a contract to provide solid waste disposal services to all or part of the county with or without competitive bidding. I.C. § 31-4403(6).

meetings and participated in the discussions. At the conclusion of the October 23 meeting, the Commissioners voted to enter into contract negotiations with Simmons Sanitation. They did so, and on November 30, 2012, they entered into a contract for a ten-year term commencing on January 1, 2013.

On March 25, 2013, Walco filed this action against the County and Simmons Sanitation. Walco alleged a claim against the County for tortious interference with a prospective economic advantage and a claim against the County and Simmons Sanitation for misappropriation of Walco's trade secrets. All of the parties filed motions for summary judgment. In response to the County's motion, Walco conceded that its tortious interference claim should be dismissed. The district court granted summary judgment to the Defendants on the claim that they had misappropriated Walco's trade secrets, concluding that the dollar amount of Walco's proposal did not constitute a trade secret because Walco had not taken reasonable steps under the circumstances to maintain the secrecy of that information. Walco filed a motion for reconsideration, which the district court denied after briefing and argument. Walco then timely appealed.

## II.
### Did the District Court Err in Granting Summary Judgment?

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46-47, 44 P.3d 1100, 1101-02 (2002). We construe all disputed facts and draw all reasonable inferences from the record in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id*.

To recover under the Idaho Trade Secrets Act, I.C. §§ 48-801 to 48-807, the Plaintiff must show that a trade secret actually existed. *Basic Am., Inc. v. Shatila*, 133 Idaho 726, 734, 992 P.2d 175, 183 (1999). In the district court, Walco contended that the dollar amount of its proposal was the trade secret. One of the requirements of the statutory definition of a trade secret is that the alleged trade secret be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." I.C. § 48-801(5)(b).

3

The district court held that "the facts of this case would not allow a reasonable jury to conclude that Walco made reasonable efforts to maintain the confidentiality of its trade secret." In reaching that decision, the district court considered eight factors, which were:

1) Whether documents or computer files containing the information were marked with confidentiality warnings;

2) Whether plaintiff instructed its employees to treat the information as confidential;

3) Whether plaintiff restricted access to the information to persons who had a business reason to know the information;

4) Whether plaintiff kept the information in a restricted or secured area;

5) Whether plaintiff required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

6) Whether plaintiff took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

7) The extent to which any general measures taken by plaintiff would prevent the unauthorized disclosure of the information;

8) Whether there were other reasonable measures available to plaintiff that it did not take.

With respect to the first factor, the district court noted that Walco's proposal was not marked with any confidentiality warnings. Although the envelope was sealed with a piece of tape, the court held that was insufficient to indicate that the contents were confidential. As to the second, fourth, and fifth factors, the court stated that Walco had not presented any evidence relevant to them. Regarding the third factor, the court concluded that there was nothing to indicate that Walco restricted access to the dollar amount of its proposal to persons who had a business reason to know because the bid was opened and discussed during a public meeting without objection. As to the sixth and seventh factors, the court held that Walco had not taken any action to protect the dollar amount of its proposal and had not instituted any general measures to prevent its disclosure. Finally, the court held with respect to the eighth factor that Walco could have taken reasonable measures to protect the information regarding the dollar amount of its proposal, such as by marking it confidential, requesting in advance that it not be disclosed, asking that it be discussed in executive session, and refusing to discuss it during a public meeting in the presence of a representative of Simmons Sanitation.

On appeal, Walco contends that there is sufficient evidence in the record from which a jury could reasonably conclude that it had taken reasonable efforts under the circumstances to maintain the secrecy of the dollar amount of its proposal. It contends that the letter submitted by

4

its counsel to the County after contract negotiations broke down and the fact that its proposal was submitted in a sealed envelope created a genuine issue of material fact as to whether it took reasonable efforts under the circumstances to maintain the secrecy of the dollar amount of its proposal.

In the letter dated June 7, 2012, Walco's counsel wrote, "With respect to Walco's proprietary information, we respectfully request that any proprietary information held by the county be retained by the county and treated as exempt from public disclosure." The letter did not identify what the proprietary information could be. It certainly could not be reasonably interpreted as referring to the dollar amount of a proposal that Walco would later submit in response to a request for proposals that had not yet been issued, because that information was not held by the County at the time it received the letter.

The proposal later submitted by Walco in response to the request for proposals was in an envelope that was taped shut. Walco contends that this is evidence of a reasonable effort to maintain the secrecy of the dollar amount of its proposal. There was nothing on the outside of the envelope suggesting that its contents were confidential. Absent any such written notice on the outside of the envelope, there was no reason for the County to believe that the contents of the letter were intended to be kept secret. A representative from Walco was present at the Commissioners' meeting on October 15, 2012, when the proposals were to be opened. The proposal from Simmons Sanitation was opened first, and the dollar amount of its proposal was announced orally. Then the proposal from Walco was opened and the dollar amount of its proposal was announced. A Walco representative was present and made no objection as both proposals were opened and announced. Under the circumstances, the sealing of the letter is insufficient to create a genuine issue of material fact that Walco took reasonable steps to maintain the secrecy of the envelope's contents.

Walco contends that one of the provisions in the request for proposals could reasonably be construed as indicating that the dollar amounts of the proposals would not be announced at a public meeting. The language of the request for proposals upon which Walco bases this argument is as follows:

**EVALUATION OF PROPOSALS**
    A.    Evaluation Process - Proposals may be evaluated according to the process outlined in this section. COUNTY may conduct the evaluation process as follows:

1. All Proposals received by the submission date identified in the Notice of Request for Proposal will be catalogued and distributed for preliminary review by County staff and/or its advisors. Each proposal will be reviewed for responsiveness and completeness by COUNTY and/or its advisors. At COUNTY'S discretion, proposers may be notified by COUNTY of omissions or of the need to modify the proposal, and a schedule for provision of the missing information or issuing an amended proposal may be established by COUNTY.
2. Based on the evaluation criteria set forth below, evaluation of Proposals found by COUNTY to satisfy minimum requirements will be conducted by COUNTY and/or its advisors. COUNTY may conduct interviews to discuss or clarify aspects of Proposals with some or all Proposers.
3. The Board of Commissioners will decide which proposer(s), if any, is (are) the successful proposer(s) and COUNTY will begin contract negotiations with the successful proposer(s).

If for any reason during the course of negotiations with the successful proposer the County determines in its sole discretion that an acceptable Agreement cannot be negotiated, the County reserves the right to suspend negotiations with the successful proposer, contact the second ranked proposer, and begin negotiations with that proposer. The County reserves the right to reject any and all Proposals.

There is nothing in the above provision that could reasonably be construed as indicating that the proposals would not be opened in public, nor has Walco pointed to anything in the record indicating that any of its principals so interpreted the provision. More importantly, the information in its proposal could constitute a trade secret only if Walco took "efforts that are reasonable under the circumstances to *maintain* its secrecy." I.C. § 48-801(5)(b) (emphasis added). By failing to object to the opening of its proposal after the Walco representative knew that the proposals were being opened in public, Walco failed to take reasonable efforts to maintain the secrecy of its proposal, even assuming that it believed that its proposal constituted a trade secret.

Walco also contends that at one point in the public discussions about the two proposals, it objected that its proposal was being misappropriated. The record does not support that assertion. Walco relies upon a statement made by Ms. Holman, one of its principals, on October 30, 2012, well into the third public meeting. The statement was as follows:

MS. HOLMAN: And it [the request for proposals] says that you guys are specifically going to base it on the qualifications and the criteria. It says, it will be based on the four categories provided. So if we're basing it on one sheet of

6

paper and the fact that the whole time we were being told, it's incomplete. It's incomplete. It's kind of like, okay, tell us where it's incomplete. We didn't get that until Robert's [Robert Simmons representing Simmons Sanitation] was complete, but we're sitting here going, well, what about this, this, this, this, and this, and asking all these questions, and he's being able to just throw numbers whatever he wants at it at the time. And the fuel—I'm sorry, but should have had it last Monday or Tuesday whenever you guys opened this up like that. So it's just a clear—to us just this isn't a fair bid process.

Ms. Holman commented several times that she did not believe the process was fair. Earlier that day during the public discussion regarding the specifics of the two proposals, she stated:

It's created a whole unfair bid process because now we're basically battling with each other when the whole fair bid process is look at the best bid provided for what you asked for.
. . . .
But yet we continued to have to ask questions about the transfer station, price per ton, and so from that point—even from that point the fair bid process was out the door because he knew our number. We knew his number, and we both—I mean, it's just pretty obvious that we're both battling for a contract, but it's not fair to either one of us and—
. . . .
[W]hat happened after the opening of the bids it's just not a fair bid process.

Ms. Holman objected to the process in which the Commissioners continued negotiating with the parties after the proposals were open. The Commissioners contended that the process was permitted according to the terms of the request for proposals.[2] Her statement could not be reasonably construed as objecting to the public opening of Walco's proposal and the announcing of the dollar amount of its proposal. However, as mentioned above, a party claiming that certain information is a trade secret must take efforts that are reasonable under the circumstances to *maintain* the secrecy of that information. After discussing the two proposals in detail at three public hearings, had Ms. Holman objected during the third public hearing that the amount of Walco's proposal was a trade secret, such objection would have come too late.

Finally, Walco contends that there was sufficient evidence to show that Commissioner Brandt wrongfully obtained Walco's proposal and provided it to Mr. Simmons of Simmons

---

[2] The request for proposals included a provision stating, "The Board of Commissioners will decide which proposer(s), if any, is (are) the successful proposer(s) and COUNTY will begin contract negotiations with the successful proposer(s)."

Sanitation. The Clerk of the District Court, who is also the ex officio Auditor/Recorder for Idaho County and Clerk for the Board of Idaho County Commissioners, stated in her affidavit that Simmons Sanitation's proposal was brought into her office just after 3:00 p.m. on October 12, 2012; that Walco's proposal was brought into her office just before 5:00 p.m. on October 12, 2012; that immediately after each was delivered, she placed them in a file in her desk; that to the best of her knowledge nobody touched, viewed, or removed the envelopes until she did on October 15, 2012; and that she did not remove them until just before 3:00 p.m. on October 15, 2012, when she took them to the public meeting and gave them to Commissioner Brandt.

Walco contends that conduct after the proposals were opened at the meeting creates an issue of fact regarding whether Commissioner Brandt misappropriated Walco's trade secret, which was the dollar amount of its proposal. Walco was represented at the public meeting on October 15, 2012, but no representative of Simmons Sanitation was present. In his deposition, Commissioner Brandt testified that after the meeting, he telephoned Mr. Simmons three times and discussed with him Walco's proposal. In his deposition, Mr. Simmons testified that he did not remember discussing Walco's proposal during those telephone conversations. Walco contends that Mr. Simmons's testimony that he did not remember talking about Walco's proposal with Commissioner Brandt during those telephone conversations shows that Mr. Simmons believed that the information about Walco's proposal had been wrongfully obtained by Commissioner Brandt.

Under certain circumstances, a person can recover damages for the misappropriation of a trade secret. I.C. §§ 48-801(2), 48-803. However, in order to recover, the information allegedly misappropriated must be a trade secret. *Id*. Because Walco's proposal could not qualify as a trade secret once it was opened and the dollar amount was read aloud at the public meeting without objection from the Walco representative, Commissioner Brandt's possession of the proposal after the meeting could not constitute misappropriation.

For the above reasons, the district court did not err in holding that the dollar amount of Walco's proposal did not constitute a trade secret because Walco did not make efforts that were reasonable under the circumstances to maintain the secrecy of that information. Therefore, we affirm the judgment of the district court dismissing Walco's complaint.

8

**III.**
**Is Simmons Sanitation Entitled to an Award of Attorney Fees on Appeal?**

Simmons Sanitation requests an award of attorney fees on appeal pursuant to Idaho Code section 12-121 on the ground that Walco failed to appeal an alternative ground for the district court's opinion. This Court has held that if a trial court grants summary judgment on multiple independent grounds and the appellant fails to address one of those grounds in the appellant's opening brief, the judgment must be affirmed. *Cuevas v. Barraza*, 155 Idaho 962, 965, 318 P.3d 952, 955 (2014). Simmons Sanitation contends that the district court granted summary judgment against Walco on two independent grounds and Walco failed to challenge one of them in its opening brief.

Idaho County and Simmons Sanitation moved for summary judgment on the claims asserted against them by Walco. In response, Walco moved for summary judgment seeking a ruling that the request for proposals was as a matter of law an invitation for bids. If it was an invitation for bids, the process would have been governed by Idaho Code section 67-2801 et seq. The district court granted the Defendants' motions for summary judgment but did not rule upon Walco's motion. Walco has not contended on appeal that the district court erred by failing to rule upon its motion for summary judgment. Therefore, the question of whether the County's request for proposals was actually an invitation for bids is not an issue on appeal.

The district court held that Walco should be estopped from asserting a trade secret claim, but its ruling could reasonably be read as applying only if it had granted Walco's motion for summary judgment. The court stated that the statutory bidding process required that bids be opened in public at a designated place and time. It then concluded, "Consequently, even if this Court were to grant Walco's motion for summary judgment and conclude that the County's request for proposals was in fact a request for bids, it would defeat Walco's claim for misappropriation of a trade secret because that process must be public." Because the court's ruling regarding estoppel could reasonably be read as applying only to the contention that the process was an invitation for bids and not a request for proposals and because that question is not an issue on appeal, we hold that it was not an alternative independent ground as to whether the Trade Secrets Act was violated. Therefore, Simmons Sanitation is not entitled to an award of attorney fees on appeal based upon the alleged failure of Walco to appeal an alternative independent ground for the district court's judgment.

9

## IV.
## Conclusion.

We affirm the judgment of the district court and we award Respondents costs on appeal.

Chief Justice J. JONES, Justices BURDICK, W. JONES, and J. Pro Tem HOSACK **CONCUR.**