## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46171

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Boise, May 2019 Term** |
| **v.** | ) | |
| | ) | **Opinion Filed: August 23, 2019** |
| **AARON EUGENE LANTIS,** | ) | |
| | ) | **Karel A. Lehrman, Clerk** |
| **Defendant-Respondent.** | ) | |
| | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Gerald F. Schroeder, District Judge.

The ruling of the district court is affirmed.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Appellant. Kenneth K. Jorgensen argued.

Ada Country Public Defender, Boise, attorney for Respondent. Anita M. Moore argued.

---

BEVAN, Justice

### I. NATURE OF THE CASE

This appeal concerns the application of Idaho's Disturbing the Peace Statute, Idaho Code section 18-6409, to the unique facts presented in this case. Aaron Lantis was convicted of misdemeanor disturbing the peace by sending sexually suggestive photographs of his ex-girlfriend to her employer in an effort to get her fired. During trial, Lantis moved for a judgment of acquittal asserting that the statute did not apply to his actions. The magistrate court denied Lantis' motion. Lantis was found guilty by a jury and he made the same motion post-verdict, which was likewise denied. He appealed to the district court, asserting the same grounds. The district court agreed with Lantis and vacated Lantis' conviction, holding that Lantis' conduct was outside the scope of the statute. The State appealed and we affirm the district court.

### II. FACTUAL AND PROCEDURAL BACKGROUND

1

Aaron Lantis was charged with the misdemeanor offense of disturbing the peace in violation of Idaho Code section 18-6409. The State alleged he committed the crime by sending sexually suggestive photographs of H.H. (Lantis' ex-girlfriend) to her employer in an unsuccessful attempt to have her fired. During trial, H.H. testified that Lantis' conduct left her feeling humiliated, fearful for her job, and worried what recipients of the email in question thought of her. After the State rested, Lantis made a motion for judgment of acquittal pursuant to I.C.R. 29(c) and a motion to dismiss pursuant to I.C.R. 48. Both motions were denied. Lantis was found guilty by the jury.

Following the verdict, Lantis made a post-verdict motion for judgment of acquittal under Rule 29, asserting that the State's evidence was insufficient to sustain a conviction since it failed to prove an *actus reus* falling within Idaho Code section 18-6409. This motion was again denied by the magistrate judge. Lantis then appealed to the district court, which reversed the jury's verdict and vacated the judgment of conviction. The district court held that the State failed to present evidence supporting a conviction for disturbing the peace because, while the conduct was "clearly offensive," it was "outside the statutory definition of disturbing the peace." Lantis also raised a constitutional challenge, alleging that the statute was void for vagueness as to his conduct. The district court did not reach that issue since it decided the case on statutory construction grounds. The State then appealed.

## III. ISSUES ON APPEAL

1. Did Lantis' act of sending compromising pictures of H.H. to H.H.'s employer fall within the purview of Idaho Code section 18-6409?
2. If Lantis' conduct does constitute disturbing the peace as defined in section 18-6409, is the statute void for vagueness and overbreadth?

## IV. STANDARD OF REVIEW

On review of a decision rendered by a district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision. *In re Estate of Peterson*, 157 Idaho 827, 830, 340 P.3d 1143, 1146 (2014). This Court exercises free review over statutory interpretation because it is a question of law. *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013).

The constitutionality of a statute is also a question of law over which this Court exercises free review. *Alcohol Beverage Control v. Boyd*, 148 Idaho 944, 947–48, 231 P.3d 1041, 1043–44 (2010).

## V. ANALYSIS

### A.     Statutory Analysis.

The objective of statutory construction is to derive the intent of the legislature from the words used and the context of the statute at issue. *State v. Smalley*, 164 Idaho 780, ____, 435 P.3d 1100, 1104 (2019). Deriving such intent must begin with the literal language of the statute. *Id*. "If the statute is ambiguous, then it must be construed to mean what the legislature intended for it to mean." *In re Adoption of Doe*, 156 Idaho 345, 349, 326 P.3d 347, 351 (2014) (citation omitted). In such circumstances, legislative intent is determined by examining "the literal words of the statute . . . the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history." *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 583, 416 P.3d 951, 955 (2018).

Statutory "[p]rovisions should not be read in isolation, but rather within the context of the entire document." *Smalley*, 164 Idaho at ____, 435 P.3d at 1104. This Court must give effect to all the words in the statute so that none will be void or superfluous. *Id.* If the language of a statute is unambiguous, the intent of the legislative body as reflected by the statute's plain language must be given effect, and the Court need not consider rules of statutory construction. *Id.*

In applying these criteria, we must also remember that "statutes which are *in pari materia* are to be taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions." *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho at 583, 416 P.3d at 955 (internal citation omitted).

Given the disparate, yet reasonable constructions of the statute offered by the State and the district court, we conclude that the meaning of "disturb the peace" is ambiguous. A statute "is ambiguous where reasonable minds might differ or be uncertain as to its meaning." *Id* at 582, 416 P.3d at 954 (internal citation omitted). We therefore must "look to rules of construction for

guidance and consider the reasonableness of proposed interpretations." *Id*. We will therefore begin by looking at the statute from its historical beginnings.

### B. A Historical Perspective.

This process becomes complicated in the case before us. It requires more than simply quoting a standard of review and looking up the meaning of words in an online dictionary. Indeed, the statute we are called upon to interpret was originally adopted by Idaho's territorial legislature in 1863–64. *See Idaho Cr. & P. Act* §118 (1864). Thus, we are tasked to analyze this statute, adopted in Idaho's frontier days, against a factual scenario born in the internet age. The conduct at issue involves behavior that even defense counsel concedes in briefing was "offensive." Sending salacious emails to an ex-girlfriend's employers with the motive to get her fired is at once offensive and even reprehensible. Even so, our analysis must focus on whether such conduct was what our territorial legislators had in mind when they adopted a statute that prohibited disturbing the public's peace in 1864 – a statute whose words have largely remained unchanged in the intervening 150 years. We conclude that the statute was not intended to reach so far, and it thus cannot be overextended to address the personal sensibilities of one offended by offensive emails in our modern age of Facebook posts and Twitter feeds.

The statute as originally crafted made it a misdemeanor to

> wilfully [sic] and maliciously disturb the peace or quiet of any neighborhood or family, by loud or unusual noises, or by tumultuous and offensive conduct threatening, traducing, quarrelling, challenging to fight or fighting. . . .

Idaho Cr. & P. Act, §118 (1864). This language was amended thirteen years later by the Idaho Territorial Legislature. The statute remained within the act for *Crimes Against the Public Peace*, but added the word "person" to its reach of potential victims:

> Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood, family *or person*, by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging, to fight or fighting. . . is guilty of a misdemeanor.

R.S. Title X, §6959 (1887) (emphasis added). Title X continued to identify this crime as one within the umbrella of "Crimes Against the Public Peace."

This statutory language has remained unchanged for over 130 years, even though the statute was renumbered and retitled in 1972.[1] *See* S.L. 1972, ch. 336, § 1; S.L. 1972, ch. 381, §

---

[1] Additional amendments were made in 1994 and 2007 which are immaterial to the question before us.

14. At that time, the crime itself was given the label of "Disturbing the Peace"; it was moved to Title 18, chapter 64; and the chapter was given a new title: "RIOT, ROUT, UNLAWFUL ASSEMBLY, PRIZE FIGHTING, DISTURBING PEACE"[2] (capitalization in original).

Thus, the language of the statute in 2016, when Lantis was charged with this crime, is identical to what it was in 1887. Once again, for ease of reference, the statute reads:

> Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood, family or person, by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or fires any gun or pistol, or uses any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner, is guilty of a misdemeanor.

I.C. §18-6409 (2016).

### C.      Analysis

Based on this language, Lantis was ultimately charged with "willfully and maliciously disturb[ing] the peace of a person, to wit: [H.H.], by offensive conduct, by sending an offensive email and/or pictures to [H.H.'s] employer." The case went to trial and the jury was instructed that the State was required to prove, among other things, that Lantis "maliciously and willfully disturbed the peace or quiet of [H.H.] by offensive conduct." The jury found that these elements were met and found that sending the offensive email to H.H.'s employer and its board of directors disturbed H.H.'s personal "peace." The question which we now address is whether disturbing one's personal peace, through transmitting offensive material to a third party, is a violation of a law originally crafted in the late 1800's.

To resolve this question we must determine whether the legislative body, before Idaho was even a state, intended this statute to cover the type of behavior alleged here. Behavior which, no-doubt may disturb one's personal peace, but which is not the kind of conduct which would disturb the *exterior peace and quiet* of the victim or of those in close proximity to the person exhibiting the offensive conduct. We hold that the statute does not prohibit such conduct.

The State correctly points out that the statute, read broadly in the disjunctive, as we are bound to do,[3] would appear to create criminal liability for any individual "who maliciously and

---

[2] As noted by the legislature in its statement of purpose in 1972, "[t]he act effectively re-enact[ed] . . . the 'Old Criminal Code', which existed in full force and effect in the state of Idaho on December 31, 1971. No changes or amendments [were] made to the old criminal code in th[e] act."

[3] *See Smalley,* 164 Idaho at ____, 435 P.3d at 1104 (quoting *State v. Cota-Medina*, 163 Idaho 593, 600, 416 P.3d 965, 972 (2018) (The word "or" is a "disjunctive particle used to express an alternative or to give a choice of one among two or more things.")

willfully disturbs the peace or quiet of any . . . person, by . . . offensive conduct. . . .” *Id*. This was precisely how the jury was instructed. But parsing the words of the statute in such a way ignores other language in the statute and the “spirit and policy” of the statute’s “several parts and provisions.” *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho at 583, 416 P.3d at 955.

As noted above, it is significant that this statute, as originally adopted in 1863–64 was part of the “Crimes and Punishment” section of the law, which prohibited disturbances to the *public* peace. The statute, as amended in 1887 to add the word “person” to the statute in Title X, remained codified in the “Crimes Against the Public Peace” portion of the code. Once the statute was renumbered and moved into Chapter 64 of Title 18 in 1972 it was identified as “disturbing the peace,” and placed in a chapter that dropped the “public peace” moniker, but which retained the original intent of the statute, by including it within a system of statutes designed to govern public disturbances such as riot, rout, unlawful assembly and disturbing the peace. We view this detail as significant, since the statute before us is part of that larger system which continues to criminalize crimes *against the public peace*. *Cf. State v. Neal*, 159 Idaho 439, 445, 362 P.3d 514, 520 (2015) (a statute’s placement “in the center of a series of statutes dealing with managing traffic safety vis-a-vis other vehicles” was relevant to this Court’s determination of the statute’s meaning).

Thus, as we scrutinize the meaning of “disturbing the peace,” we also acknowledge the other series of statutes within Title 18, Chapter 64 which require breaches of the *public* peace. For example, to riot requires the “use of force or violence, or threat thereof, disturbing the public peace.” I.C. §18-6491. The same chapter prohibits an unlawful assembly, wherein two or more persons “assemble together to do an unlawful act . . . or [to] do a lawful act in a violent, boisterous or tumultuous manner. . . .” I.C. §18-6404.

The district court, acting in its appellate capacity, relied upon this factor as establishing the intent of the legislature, that Idaho’s disturbing the peace statute:

> [P]rohibits disturbing, for lack of a better term, the ‘exterior’ or ‘sensory’ peace of a neighborhood, family or person. It does not prohibit offending someone’s ‘internal’ sensibility by sending an email to them or to their co-workers, as occurred here. It does not prohibit embarrassing someone by sending an offensive electronic communication.

We agree with this reasoning. It supports the conclusion we reach here, holding that to violate Idaho’s disturbing the peace statute, one must disturb the *exterior or sensory peace* of a neighborhood, family or person. Disturbing the mental wellbeing of another or one’s internal

6

peace is not encompassed in what the legislature intended in adopting this statute. This is particularly fitting here where the offending conduct involved the transmission of electronic communication to third parties who were not alleged to be victims of the offensive emails themselves. We recognize that this conduct certainly resulted in mental anguish to H.H. personally – but Lantis' act, the *actus reus* of disseminating offensive pictures to third parties, is not an act of disturbing the public peace, and H.H. is therefore not a victim under this statute.[4]

This result is likewise supported by acknowledging the related terms within the body of the Disturbing the Peace statute itself, which include loud or unusual noise, gun fire, challenging someone to a fight, loudness or boisterousness, or tumultuous conduct. Such words color our view of the legislature's intent in prohibiting one from *disturbing the peace*.

While the State argues that the legislature's inclusion of the word "traducing" in the statute points to a legislative intent to include disturbing one's internal peace through slandering that person, we disagree. Once again, reading the statute as a whole, for a person to be convicted of disturbing the peace through traducing another, any slander or shame directed towards another would have to be made in a public arena, or communicated to the public in such a way as to disturb the *public peace* of the victim or the public generally, and not just as a means to disturb another's internal sensibilities. Traducing was included in the statute as it was originally adopted in 1864, in the "crimes against public peace" section. It retains such a requirement in its current iteration. Thus, notwithstanding the disjunctive words in the statute when taken in isolation, the legislative intent is more properly resolved by analyzing the legislative pronouncement as a whole. The words used in the statute should not be addressed in a vacuum. *State v. Neal*, 159 Idaho at 445, 362 P.3d at 520 (quoting *Lockhart v. Dep't of Fish and Game,* 121 Idaho 894, 897, 828 P.2d 1299, 1302 (1992) ("Language of a particular section need not be viewed in a vacuum. And all sections of applicable statutes must be construed together so as to determine the legislature's intent."). "Statutes and ordinances should be construed so that effect is given to their provisions, and no part is rendered superfluous or insignificant." *Friends of Farm to Mkt. v. Valley Cnty.*, 137 Idaho 192, 197, 46 P.3d 9, 14 (2002).

---

[4] We note that Idaho's legislature has recognized that Lantis' conduct is the type of misbehavior that should be criminalized – and even made a felony -- when it recently adopted a statute prohibiting the dissemination of pictures in which another person's "intimate areas are exposed." *See* Idaho Code §18-6609(3) (2018); S.L. 2018, ch. 256, § 1.

This result is likewise supported by utilizing a tool of linguistic analysis known as corpus linguistics. "[C]orpus linguistics may be thought of as a linguistic methodology that analyzes language function and use by means of an electronic database called a corpus." Stephen C. Mouritsen, *The Dictionary Is Not A Fortress: Definitional Fallacies and A Corpus-Based Approach to Plain Meaning*, 2010 B.Y.U. L. Rev. 1915, 1954 (2010). Using corpus linguistics in a legal setting allows reviewing courts like ours to analyze the particular meaning of words in the context of their linguistic usage patterns. *See* Stephen C. Mouritsen, *Hard Cases and Hard Data: Assessing Corpus Linguistics as an Empirical Path to Plain Meaning,* 13 Colum. Sci. & Tech. L. Rev. 156, 160–61 (2012) (When terms are to "be interpreted according to their ordinary meaning, they implicate a set of empirical questions, many of which are amenable to different types of linguistic analysis. . . . [I]n the field of corpus linguistics, scholars . . . determine . . . those meanings that are consistent with common usage," or "the term's ordinary or most frequent meaning" based on empirical data rather than personal intuition.).

Courts are beginning to utilize corpus linguistics as a means to aid the interpretation of statutory language in context and with the use of the empirical data available through extensive corpora, which catalogue millions of words. For example, in *People v. Harris*, 885 N.W.2d 832, (Mich. 2016), the Michigan Supreme Court turned to the Corpus of Contemporary American English (COCA) to interpret the word "information" and to "analyze [ ] ordinary meaning through a method that is quantifiable and verifiable." *Id.* at 838–39 (quoting Mouritsen, *Hard Cases and Hard Data*, *supra*, 13 Colum. Sci. & Tech. L. Rev. at 202). The court there found that empirical data from the COCA supported a definition of "information" that resolved the question before it. *See also State v. Rasabout*, 356 P.3d 1258 (Utah 2015) (Lee, J., concurring) (urging courts to employ "corpus linguistics," a method of interpretation which involves "access[ing] large bodies of real-world language to see how particular words or phrases are actually used in written or spoken English"). One of the chief benefits of a corpus-linguistics-style analysis is that it offers a systematic, non-random look at the way words are used across a large body of sources. *See id.*

We agree with these sentiments, but we recognize that the parties did not argue these principles in their briefing or at oral argument. We simply reference the use of corpus linguistic tools as a support for our analysis set forth above, and as an motivation for counsel to consider

this "potential additional tool for our statutory interpretation toolbox," *id*. (Durham, C.J. Concurring), when called for in the future.

Given the historical perspective necessary to interpret "disturbing the peace" in this case, we turn to the Corpus of Historical American English, or COHA, which is a 400-million-word corpus of text from 1810 through 2000. While the Corpus of Founding Era American English (COFEA) could also be utilized, it predates the statute in question by nearly 100 years, so COHA was used instead because it can provide data more relevant to the specific time period in question. That research empirically shows that the phrases "disturb the peace," "disturbing the peace" "disturbed the peace" and "disturbs the peace," in a search from the time period of 1850 to 1890 produced 69 responses. Of those responses, 61, or 88.4% referenced a public, external, physical peace; five (7.2%) were unclear in meaning or reference, and only 3 (4.3%) referenced a private, internal, emotional peace. Thus, utilizing COHA data for the 1850s to the 1900s supports our conclusion that "disturbing the peace" has a meaning that nearly always refers to public, external peace. We note this result because, according to the corpus data, the words, phrases, and contexts associated with the historic use of this phrase have connotations which relate to public and external ideas and notions of peace, more than private or internal ideas and notions. Thus, while our analysis independent of COHA fully supports our conclusion here, we note COHA's findings as additional empirical evidence that our conclusion is correct.

Because of our holding that Lantis' conduct did not fall within the purview of Idaho Code section 18-6409 we do not reach the second issue concerning whether section 18-6409 is void for vagueness and overbreadth.

## VI. CONCLUSION

Based on the foregoing, we affirm the district court's conclusion that the disturbing the peace statute does not extend to email transmissions transmitted to third parties which disturbed the internal peace of the victim.

Justices STEGNER and MOELLER, CONCUR

BRODY, Justice, specially concurring:

I concur with the Court's opinion today, but write separately to address the use of corpus linguistics. I have no training or experience with corpus linguistics and have no opinion as to whether this tool supports or does not support the Court's analysis of the statute at issue.

Whether to use corpus linguistics as an interpretive tool, how to use the databases, and how to interpret the results of a database search are all issues that will need to be addressed in future cases where the use of corpus linguistics is advanced by a party.

Chief Justice BURDICK joins in the special concurrence.