**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 50513**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Boise, September 2024 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: November 26, 2024** |
| | ) | |
| **FERNANDO RODRIGUEZ,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Respondent.** | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County, Jonathan Medema, District Judge.

The decision of the district court is <u>reversed</u>.

Raúl R. Labrador, Idaho Attorney General, Boise, for Appellant. Kenneth K. Jorgensen argued.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Respondent. Brian R. Dickson argued.

_____

BRODY, Justice.

This case addresses whether a prison inmate's conduct—dumping soap onto the concrete floor of a prison tier, near the door, during a disturbance among fellow inmates inside the tier—falls within the ambit of Idaho Code section 18-6401, Idaho riot's statute.. The State appeals from the district court's order dismissing the charge of riot against Fernando Rodriguez, an inmate housed in an Idaho Department of Correction (IDOC) facility. The State alleged Rodriguez had participated in a riot at the Idaho State Penitentiary by creating "a disturbance of the peace" or causing "damage or destruction to property" by "starting a fire in a trash can and/or by harassing IDOC staff members and/or by dumping soap near the door" while "acting together with others and without authority of law."

After a preliminary hearing, the magistrate court found probable cause to believe that Rodriguez had committed the crime of riot and bound him over to the district court. Rodriguez

moved to dismiss the charge. After determining that the evidence presented at the preliminary hearing pertaining to Rodriguez's actions—including surveillance video taken within the prison depicting the incident—only supported a finding that Rodriguez had dumped soap on the concrete floor, the district court granted the motion to dismiss. The district court concluded: (1) there was no evidence to support a finding that Rodriguez's action in dumping soap on the floor resulted in property damage; and (2) Rodriguez did not commit a riot by "disturbing the public peace" because the section of the Idaho Code referring to a disturbance of the "public peace" does not apply to a prison setting, which is where the disturbance took place. For the reasons expressed below, we reverse the decision of the district court.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Rodriguez was an inmate housed in an IDOC facility in April of 2021. On April 10, 2021, a disturbance arose inside "tier one" of H-Block of the facility where Rodriguez was incarcerated. Tier one is a large, multi-purpose room where inmates reside. The disturbance arose after officers handcuffed and escorted an inmate out of the tier who appeared to have been involved in a fight. In the process of handcuffing the inmate, officers forced the inmate to the ground face-first. This upset some inmates on the tier.

As officers escorted the handcuffed inmate off the tier, inmates rushed the door as it closed. After the door was closed, some inmates threw crutches and other objects around the room. Toilet paper wads were thrown about, and trashcans were overturned. Some inmates then threw pipes and metal fans around the room, while other inmates barricaded the fire escape door with a table, chairs, and a laundry bin. Some inmates then dumped things onto the ground near the door, including soap. Minutes later, a few inmates lit fires in trash cans and carried burning sheets around the room. The resulting damage included a hole in the wall, damage to ceiling tiles and trash cans, charring or scorching on the floor, and smoke damage to the ceiling tiles.

The State subsequently filed a complaint against Rodriguez for the crimes of riot and arson. The riot charge alleged that Rodriguez had "create[d] a disturbance of the peace and/or caused damage or destruction to property" at the Idaho State Penitentiary "while acting together with others and without authority of law" by "starting a fire in a trash can and/or by harassing IDOC staff members and/or by dumping soap near a door." Several other inmates were also charged. A preliminary hearing was held before the magistrate court; all of the cases arising out of the incident were heard at once.

2

At the preliminary hearing, the State presented evidence establishing that Rodriguez had poured soap on the floor, near the door into the tier, during the disturbance. Video recordings of the disturbance were admitted into evidence and correctional officers provided testimony identifying some of the inmates seen in the video. After other inmates had been identified as kicking doors, throwing crutches, squirting soap on a window, and barricading the fire escape door, Rodriguez was identified as one of the inmates who (1) rushed the tier door as it closed and (2) dumped soap on the floor near the door into the tier. This was the only testimony pertaining to Rodriguez's actions during the disturbance or identifying him in the video footage of the disturbance.

At the end of the preliminary hearing, the magistrate court concluded that there were sufficient grounds to bind Rodriguez over to the district court on the riot charge, but not the arson charge:

> I do find that a public offense [of riot] has been committed, that you are likely the person that committed that. I'm going to bind over Count I.
>
> As to Count II [the arson charge] my issue -- and the reason I'm not going to bind it over has nothing to do with the grading of arson, and so there's no amended commitment needed, but I simply don't find that the State has presented evidence that you are likely the person involved in any arson.
>
> There was some potential testimony, but really the person that would have testified, the last witness . . . did not present to me information that you were one of the people involved in any of the burning sufficient for me to bind it over, so I'm going to dismiss Count II.

The State subsequently filed an information charging Rodriguez with the crime of riot, again alleging that Rodriguez had acted together with others to "create a disturbance of the peace" and to cause "damage or destruction to property" by "starting a fire in a trash can and/or by harassing IDOC staff members and/or by dumping soap near the door."

Rodriguez then filed a motion to dismiss the case with the district court, contending that the elements required for a riot under Idaho Code section 18-6401 were not satisfied by any of his actions. Rodriguez raised four arguments in support of his motion to dismiss: (1) the State had failed to present any evidence at the preliminary hearing that his action had "damaged or destroyed" public property; (2) the evidence presented at the preliminary hearing did not demonstrate that he had disturbed the "public peace" because undisputed testimony established that the place where the disturbance arose is not open to the public; (3) a proper reading of Idaho Code section 18-6401(c) requires the disturbance to occur in a public place; and (4) the evidence

3

presented at the preliminary hearing did not establish that he had acted "together with others" or "aided or abetted" a riot.

After hearing oral argument on the matter, the district court dismissed the riot charge against Rodriguez, in a ruling issued from the bench. The district court first concluded that there was no probable cause to believe that dumping soap on the floor caused any property damage. The district court noted that there was no indication that the floor was damaged by the soap and the soap was either Rodriguez's personal property that he purchased from the prison commissary, was gifted to him by the prison, or was available for his personal use. The district court concluded that because soap is a consumable, "the fact he . . . us[ed] it for a purpose other than intended doesn't mean he's damaging it or destroying it. It simply means he's made it no longer usable or maybe it is depending on how much you can pick up off the floor."

The district court then addressed whether there was probable cause to believe that Rodriguez had committed the crime of riot by disturbing the "public peace." The district court rejected the State's argument that disturbing the "public peace" under the riot statute is the same as disturbing "the peace" under Idaho Code section 18-6409, which does not include the word "public." The district court also rejected the State's argument that requiring a disturbance of the public peace to occur in a public place "would eviscerate the statute" by leaving no recourse for a riot occurring in a football stadium, which is privately owned and people must pay to enter. The district court reasoned that a riot, based upon a disturbance of the public peace, could occur in a place like a football stadium, because members of the public can purchase a ticket to go there, and while privately owned, a football stadium is generally considered a place open to the public because "[tickets] are generally available to everyone." However, the district court then reasoned that a riot premised solely on disturbing the public peace could not occur in a closed-off area of a prison, where the public is not welcome at all. The district court concluded that a person could commit the crime of riot outside a prison by acting together with others to disturb the public peace or inside a prison by engaging in joint conduct that caused physical injury or property damage, but a person cannot riot inside a prison solely by causing "a disturbance of the public peace" pursuant to Idaho Code section 18-6401(c).

The district court subsequently issued a written memorandum decision and order granting Rodriguez's motion to dismiss. In its written opinion, the district court noted that there was no dispute regarding the factual findings: "[t]he parties agree that the evidence presented to the

4

magistrate judge supported a finding that Mr. Rodriguez dumped a container of soap onto the concrete floor of the tier[,]" and the floor "was not defaced or discolored." The district court analyzed whether there was probable cause to believe that Rodriguez had committed a riot by engaging in (1) "an action, by two or more persons acting together—dumping soap on the floor— that damaged public or private property—the soap.[,]" or (2) "that dumping the soap on the floor was an action by two or more persons acting together that resulted in a 'disturbance of the peace.'" (Footnote omitted).

Before addressing the issue of property damage or destruction, the district court first explained, in a footnote, that it was clear from the preliminary hearing transcript that Rodriguez was not assisted in dumping soap on the floor and there was no evidence of a conspiracy to do so. The district court then repeated its oral ruling that Rodriguez's action in dumping soap on the floor had not caused any property damage.

After concluding that Rodriguez had not committed the crime of riot based on a theory of property damage, the district court turned to the issue of whether there was probable cause to believe Rodriguez had committed the crime of riot based on a theory of disturbing the public peace. Recognizing that this Court had held that the phrase "disturbing the peace" was ambiguous in *State v. Lantis*, 165 Idaho 427, 447 P.3d 875 (2019), the district court concluded that the phrase "disturbance of the *public* peace" was even more ambiguous, and it was unclear whether the Idaho Legislature intended a disturbance of the public peace to be applicable to a prison setting.

The district court then proceeded to evaluate the history of Idaho's riot and disturbing the peace statutes. The district court concluded that at the time the riot act was added to the Idaho Code in 1864 as part of the *Crimes Against the Public Peace*, "disturbing the peace was limited to a family or neighborhood, clearly things that would not apply in a prison setting." The district court acknowledged that the "disturbing the peace" statute was amended in 1887 to include the word "persons," meaning one could disturb the peace of unrelated people, but it concluded that this addition did not impact the riot statute because the riot statute required a disturbance of the *public* peace. The district court also acknowledged the 1981 revision to the riot statute that officially classified prison rioting as a felony but reasoned the penalty for prison rioting was consistent only with the provisions in the riot statute corresponding to causing property damage or personal injury. The district court concluded that, whereas disturbing the peace under Idaho Code section 18-6409 and a riot that results in a disturbance of the peace outside a prison under Idaho

Code section 18-6401(c) are both classified as misdemeanors, the classification of prison rioting as a felony under Idaho Code section 18-6402 indicated a possibility that the legislature did not intend the "public peace" provision of the riot statute to apply to a prison setting.

After conducting this analysis, the district court ultimately concluded that the legislature's intent with respect to the disturbing the public peace provision of Idaho Code section 18-6401 remained ambiguous because it could not ascertain the specific policy behind the statute. The district court applied the rule of lenity, which construes a statute narrowly against the government, *see State v. Bradshaw*, 155 Idaho 437, 313 P.3d 765 (Ct. App. 2013), to conclude that one cannot riot inside of a penitentiary by disturbing the public peace. The district court then issued an order granting Rodriguez's motion to dismiss. The State timely appealed.

## II.     STANDARDS OF REVIEW

"The decision of a magistrate that there exists probable cause to bind a defendant over to district court for trial on the charges should be overturned only on a showing that the committing magistrate abused his discretion." *State v. Owens*, 101 Idaho 632, 636, 619 P.2d 787, 791 (1979). Likewise, this Court reviews a decision on motion to dismiss for an abuse of discretion. *State v. Hudson*, 133 Idaho 543, 545, 989 P.2d 285, 287 (1999). "When reviewing an alleged abuse of discretion, this Court reviews four elements: '[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Moore*, 170 Idaho 783, 793, 516 P.3d 1054, 1064–1065 (2022) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

"Statutory interpretation is a question of law that receives de novo review from this Court." *State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020).*State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020).

## III.     ANALYSIS

The crime of riot is defined under Idaho Code section 18-6401 as follows:

Any action, use of force or violence, or threat thereof, *disturbing the public peace*, or any threat to use such force or violence, if accompanied by immediate power of execution, by two (2) or more acting together, and without authority of law, which results in:
　(a) physical injury to any person; or
　(b) damage or destruction to public or private property; or

6

(c) *a disturbance of the public peace*[.]

I.C. § 18-6401 (emphasis added). The statute references disturbing the public peace twice: as a type of action and as a result. Thus, a defendant is guilty of the crime riot if, "acting together with one or more others, without authority of law," he "engaged in any action … which disturbed the public peace," regardless of whether he engaged in joint conduct that resulted in property damage. I.C.J.I. 1273 Riot – Felony.

The State maintains that the statute's plain language controls this case. Accordingly, the State contends the district court erred by concluding the statute was ambiguous and interpreting it narrowly to dismiss the riot charge against Rodriguez. In support of this contention, the State raises two arguments: (1) the district court misinterpreted the riot statute to require that Rodriguez's individual action result in property damage, and (2) the district court erred in concluding that the "public peace" cannot be disturbed in a prison. For the reasons expressed more fully below, we agree with the State that the correct interpretation of Idaho Code section 18-6401 is that the public peace *can* be disturbed by conduct occurring in a prison setting, and the district court erred in concluding that there was a lack of probable cause to believe that Rodriguez had committed the crime of riot by disturbing the public peace or causing property damage.

A.     **The provision in Idaho Code section 18-6401 premised on "a disturbance of the public peace" applies to prison settings.**

The first issue on appeal is the correct interpretation of the term "public peace" as applied to the crime of riot under Idaho Code section 18-6401. The State argues the term unambiguously refers to the "exterior or sensory peace" of any member of the public, citing our decision in *State v. Lantis*, 165 Idaho 427, 431, 447 P.3d 875, 879 (2019). Rodriguez argues that "public peace" refers to the "peace of the public *writ large*," which he argues must be disturbed in a public place to constitute the crime of riot under Idaho Code section 18-6401. The district court concluded that the differing interpretations of the term rendered section 18-6401 ambiguous, then interpreted the statute narrowly to conclude that the public peace referred to the peace of a neighborhood, family, or the public outside the prison setting. For the reasons expressed below, we hold that the term unambiguously refers to the exterior of sensory peace of the public *writ large*, which *can* be disturbed by conduct occurring inside a prison.

"We begin statutory interpretation with the literal language of the statute, giving words their plain, usual, and ordinary meanings." *State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020). "Provisions should not be read in isolation, but must be interpreted in the context of the

7

entire document." *Reclaim Idaho v. Denney*, 169 Idaho 406, 427, 497 P.3d 160, 181 (2021) (quoting *Hayes v. Medioli* (*In re Name Change of Doe*), 168 Idaho 511, 516, 484 P.3d 195, 200 (2021)). This includes giving effect "to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *Id.* (citation omitted). "Additionally, statutes relating to the same subject matter—or those that are *in pari materia*—must be construed together." *Nelson v. Evans*, 166 Idaho 815, 821, 464 P.3d 301, 307 (2020) (quoting *In re Adoption of Doe,* 156 Idaho 345, 350, 326 P.3d 347, 352 (2014)). "Thus, sometimes '[a] reading of the provision in the context of the entire chapter is [ ] enlightening.' " *Idaho State App. Pub. Def. v. Fourth Jud. Dist. Ct.*, 173 Idaho 140, 153-54, 540 P.3d 311, 324-25 (2023) (alterations in original) (quoting *Nelson*, 166 Idaho at 821, 464 P.3d 3 at 307).

"Where the language is unambiguous, we need not consider the rules of statutory construction." *Burke*, 166 Idaho at 623, 462 P.3d at 601. "Ambiguity is not established merely because differing interpretations are presented to a court; otherwise, all statutes subject to litigation would be considered ambiguous." *Id.* (quoting *Hamilton ex rel. Hamilton v. Reeder Flying Serv.,* 135 Idaho 568, 572, 21 P.3d 890, 894 (2001)).

Our analysis begins with the plain language of the relevant statutes and dictionary definitions. In this case, the relevant statutes are Idaho Code section 18-6401, which defines the crime of riot, and Idaho Code section 18-6402, which distinguishes a felony riot from a misdemeanor riot. Thus, these two provisions are *in pari materia* and must be construed together to understand the crime of felony rioting. *See Nelson*, 166 Idaho at 821, 464 P.3d 3 at 307.

Section 18-6401 defines a riot as "any action, use of force or violence, or threat thereof, *disturbing the public peace . . .* , which results in: (a) physical injury to any person; (b) damage or destruction to public property; or (c) *a disturbance of the public peace*." I.C. § 18-6401 (emphasis added). This definition applies whether the riot is later classified as a felony or a misdemeanor under section 18-6402. Accordingly, the crime of riot requires both a particular type of action and a specified result. Under the plain language of the statute, the action *must* involve "disturbing the public peace." I.C.§ 18-6401. Indeed, the hallmark feature of rioting, regardless of whether the riot actually resulted in physical injury or property damage, is that "the acts done must be against the public peace, or to the terror and alarm of the people." William L. Clark & William L. Marshall, *A Treatise on the Law of Crimes* § 425(d) (Herschel Bouton Lazell ed., 2d ed. 1905).

We have previously held that the term "peace" as applied to the crime of "disturbing the peace" under Idaho Code section 18-6409, while ambiguous, means "the exterior or sensory peace of a neighborhood, family, or person." *Lantis*, 165 Idaho at 431, 447 P.3d at 879 (emphasis omitted). Thus, the term "public peace" refers to the exterior or sensory peace of "the public." Used in this manner, the term "public peace" is unambiguous. Merriam-Webster's dictionary defines "the public" as "the people as a whole." *Public*, Merriam-Webster.com (last accessed Oct. 16, 2024). Alternatively, "public," when used as an adjective, means "of, or relating to, or affecting all the people," as in "public law," or "of or relating to community interests as opposed to private affairs," as in "the public interest." *Id*. Regardless of which dictionary definition is used, we conclude that the term "public peace" refers to the public interest of preserving tranquility and maintaining order within the community. It is the external or sensory peace of the public *writ large*, or the peace of "the people as a whole." *Id*. It is not the peace of any *individual* member of the public in *any* place. Whereas the public interest does not intrude into private affairs, it is concerned with community affairs.

Turning to the crux of the matter in this case, whether the public peace can be disturbed by conduct occurring inside a prison, section 18-6402 of the Idaho Code makes clear that it can. Under that section, a riot is a felony if it occurs in a prison, jail, or any other penal or correctional facility. I.C. § 18-6402. The statute makes no distinction based upon the specific actions of any rioter, or based upon any result. In other words, the definition of a riot does not change regardless of whether it is classified as a felony or a misdemeanor. Rather, section 18-6402 is, essentially, a penalty enhancement statute. If the definition of riot is met, it is a felony if certain conditions are also met (i.e., if the riot occurred in a penal institution, resulted in property damage in excess of $500 or physical injury, or if hostages were taken) and is a misdemeanor in all other circumstances. I.C. § 18-6402. Because section 18-6401 establishes that *all* riots involve "disturbing the public peace," as explained above, and section 18-6402 establishes that a prison riot is a felony, a riot can obviously occur inside a prison, and the public peace can clearly be disturbed by events transpiring inside the prison.

We conclude that the district court erred by misinterpreting the riot statute to deny the applicability of "a disturbance of the public peace" to the prison setting.

**B.     There is probable cause to believe that Rodriguez committed the crime of riot by acting together with others to disturb the public peace and causing property damage.**

9

Now that we have concluded that the "disturbing the public peace" provision of the riot statute applies to conduct occurring in a prison setting, we turn to the issue of whether there is probable cause to believe that Rodriguez's actions constituted the crime of riot based upon a disturbance of the public peace or resulting property damage. The State argues that the disturbing the public peace theory of a riot applies to Rodriguez's actions because he engaged in "tumultuous, destructive, and threatening actions" together with other inmates and "intimidate[ed] and destroy[ed] the tranquility and sense of security of non-rioting inmates and guards." The State further contends Rodriguez, as a participant in the riot, can be held criminally liable for the property damage that resulted from the riot as a whole, regardless of whether his individual actions caused the damage. In response, Rodriguez contends there is insufficient evidence to establish the "acting together" element of rioting, a conclusion he argues was an unchallenged, alternative ground for the district court's decision to dismiss the case. Because Rodriguez alleges a procedural defect with the State's appeal, we first address whether there was an alternative ground for the district court's decision before turning to the merits of each party's arguments.

"[W]hen a lower court makes a decision on alternative grounds and one or more of those grounds are not challenged on appeal, we will affirm." *Kugler v. Nelson*, 160 Idaho 408, 416, 374 P.3d 571, 579 (2016). If the district court's statements "could reasonably be read" as narrowed in scope or something other than a holding, those statements do not constitute alternative grounds for the decision and do not form a basis for this Court to affirm. *Walco, Inc. v. County. of Idaho*, 159 Idaho 131, 137-38, 357 P.3d 856, 862-63 (2015).

Here, the district court's analysis regarding the "acting together" element of rioting was contained in a footnote. In that footnote, the district court noted that there was no evidence that Rodriguez had engaged in a conspiracy to dump soap and no one had assisted Rodriguez in dumping the soap:

> The State's theory is that Mr. Rodriguez dumping soap on the floor and another inmate punching holes in the ceiling tiles are "acting together" even in the absence of evidence that they had talked about doing so before they did it, or that each was even aware the other was doing it. According to the State, if they are in the same place at the same time, they are "acting together" even if they have no idea what the other is doing and there was no plan to do those things beforehand. *Mr. Rodriguez hasn't raised any issue about the sufficiency of the evidence regarding him acting with others*. It is clear from the hearing transcript that nobody assisted him in dumping soap of [sic] the floor and there is no evidence of a conspiracy to do so.

10

(Emphasis added). We agree with the State that this language, at best, indicates that the district court would have been willing to address the "acting together" element of the crime of riot, and even grant a dismissal on that basis, if that issue had been raised by Rodriguez. This footnote does not constitute an alternative basis for the district court's decision to dismiss the riot charge.

More important than the footnote, Rodriguez's claim that the State failed to address the "acting together" element is incorrect. Both parties have provided sufficient argument and authority regarding the element of "acting together" on appeal; thus, the issue is preserved for our review.

The State argued that "Rodriguez joined the other inmates in the riot by expelling the guards, preventing them from reentry [onto the tier] (including by pouring soap just inside the door the guards would have to go through to reestablish control of the cell block)." The State also cited to authority from Illinois and California, defining the element of "acting together" under those states' respective riot statutes. *See People v. Barnes*, 89 N.E.3d 969 (Ill. Ct. App. 2017); *People v. Abelino*, 276 Cal. Rptr. 3d 728, 732 (Ct. App. 2021). In response, Rodriguez, repeating the statements made by the district court in the footnote of its written decision, argued that the "acting together" element requires either evidence that two or more persons joined in the exact same conduct simultaneously or evidence of a conspiracy. We reject Rodriguez's arguments. We agree with the State that there is probable cause to believe that Rodriguez "joined the other inmates in the riot" by contributing to the disturbance in the tier, thereby establishing the element of "acting together."

The term "acting together" does not require all rioters to have participated in the same exact physical act, nor does it require any evidence of a conspiracy between the rioters to commit an unlawful act. The crime of riot, along with other crimes against the public, such as unlawful assembly and refusal to disperse, was "designed to address the heightened threats posed to public safety and law enforcement . . . when a group of people acts together toward a common, violent or illegal end." *Barnes*, 89 N.E. 3d at 978-79 (citing Model Penal Code, § 250.1 Commentary, at 317-18 (Am. Law Inst. 1980) ("group disorder" or "mob behavior" is "more "dangerous and frightening" than "individual misconduct" and "poses special problems for the police"); remaining citations omitted). "It [is] not necessary that a previous agreement between the aggressors should have been alleged, or have been existed, to [constitute the crime of riot]." *Abelino*, 276 Cal. Rprt. 3d at 741 (first alteration in original) (citation omitted). A " 'riot' was 'a mob or an assemblage of

11

people of threatening attitude, *acting in concert*, with force and violence . . .' " and "for that reason, [rioters] were accountable for each other's actions in the course of the riot." *Barnes*, 89 N.E.3d at 979 (emphasis in original) (citations omitted). "[I]t is the concurrence of unlawful action by individuals in the use, or threat to unlawfully use force or violence that constitutes the offence of riot." *Abelino*, 276 Cal. Rptr. 3d at 741. (alteration in original) (citation omitted). Critically, "[t]he law prohibiting riots is based on the need to prevent the *combined effect of concurring violent acts*, not conspiracy." *Id.* (emphasis added).

We agree with the California court's conclusion that "acting together" does not require that the riot participants engage in the same act or require evidence of a conspiracy or agreement. *Id.* All who participate in concurrent unlawful activity creating a public disturbance, or who engage in any concerted action in furtherance of the riot as a whole—including encouragement, incitement, promotion, or providing support—are guilty of the crime of riot. This is true regardless of whether the participants knew of a plan to engage in unlawful activity ahead of time or whether the concurrent unlawful action (in other words, the riot itself) erupted spontaneously.

Turning to the critical issue in this case—whether there is probable cause to believe that Rodriguez committed the crime of riot—we conclude that there is a rational basis to conclude that Rodriguez acted together with other inmates on the tier during a prison riot. Rodriguez emphasizes that the evidence presented at the preliminary hearing establishes only that he dumped soap on the floor of the prison tier. However, at the preliminary hearing, a correctional officer also identified Rodriguez as one of the individuals in the mob of inmates who charged the door as correctional officers escorted a fellow inmate off the tier—the start of the disturbance. The evidence presented at the preliminary hearing indicates that during the course of that disturbance, the following events transpired:

- A large group of inmates advanced towards a correctional officer as another inmate was escorted out the out of the tier and charged the door as it closed.

- A large group of inmates gathered around the center of the room, yelling at security cameras and towards the window into the tier.

- Inmates banged on and kicked the doors and windows, behind which correctional officers were standing.

- Inmates threw various items around the room and at security cameras, including crutches, trash cans, and a large metal fan.

12

- Inmates barricaded the doors with tables, chairs, and a laundry bin (including the fire escape door).

- An inmate squirted soap on the tier window, thereby blurring correctional officers' view into the tier.

- Inmates, including Rodriguez, dumped soap on the floor, right by the door into the tier.

- Inmates started fires in trash cans and carried burning sheets around the room.

All of the participating inmates were together inside one large room, and all of the actions happened concurrently or in the span of minutes. It is undisputed that the actions of the inmates as a whole resulted in damaged ceiling tiles, a hole in the wall, and charring or scorching to the floor.

Rodriguez's emphasis on his individual act of dumping soap on the floor ignores the context in which his conduct occurred. At the time Rodriguez dumped soap on the floor, the disturbance was well underway. Concurrent with Rodriguez's action of dumping soap, another inmate was carrying tables and pushing a laundry bin to barricade the fire escape door. Both actions were taken at nearly the same time. Regardless of whether Rodriguez was aware of the other inmate's specific action at the time he dumped the soap, the evidence indicates that Rodriguez would have been aware of the general chaos and unrest occurring inside the tier; it was all around him. Contrary to the district court's suggestion in the footnote of its decision, it is irrelevant that "nobody assisted [Rodriguez] in dumping the soap on the floor and there is no evidence of a conspiracy to do so." Rodriguez's concurrent unlawful activity—dumping soap on the prison tier during an ongoing disturbance involving other inmates and preventing officers from exercising control over inmates inside the tier—is sufficient to constitute the crime of riot.

Because the evidence clearly establishes probable cause to conclude that Rodriguez participated in a riot and the riot as a whole resulted in property damage, there is probable cause to conclude that Rodriguez committed the crime of riot by creating "a disturbance of the peace" or causing "damage or destruction to property," as the State charged. The district court concluded there was a lack of probable cause to charge Rodriguez with the crime of riot based upon a theory of property damage because Rodriguez's *individual action* in dumping the soap did not directly cause property damage. This is an erroneous reading of Idaho Code section 18-6401. The riot statute does not require any single rioter's individual conduct be the direct cause of a specified result. Rather, under section 18-6401, if a person acts together with others to disturb the public peace, and if the *collective* actions of the group "results in: (a) physical injury to any person; (b) damage or destruction to public or personal property; or (c) a disturbance of the public peace[,]" a

13

riot has occurred. I.C. § 18-6401. Therefore, the State properly charged Rodriguez with the crime of riot under a theory resulting in a disturbance of the public peace *and* under a theory of resulting property damage. Accordingly, the district court erred in granting Rodriguez's motion to dismiss the riot charge under both of the State's theories.

## IV.   CONCLUSION

For the foregoing reasons, the district court's decision is reversed and remanded with instructions to reinstate the riot charge against Rodriguez and to conduct further proceedings consistent with this opinion.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.