## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 47069

DENNIS NELSON and LINDA NELSON, )
)
   Petitioners-Appellants. )
)
v. )
)
STEPHANIE EVANS and BRIAN EVANS, )
)
   Respondents. )

**Boise, February 2020 Term**

**Opinion filed: May 21, 2020**

**Karel A. Lehrman, Clerk**

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Jay P. Gaskill, District Judge. James Combo, Magistrate Judge.

The decision of the district court is <u>reversed and remanded</u>.

Erik P. Smith, PC, Coeur d'Alene, for Appellants. Erik P. Smith argued.

Amendola Doty & Brumley, PLLC, Coeur d'Alene, for Respondents. Jennifer K. Brumley argued.

_____

MOELLER, Justice

Dennis and Linda Nelson filed a petition in Kootenai County magistrate court seeking to establish visitation rights with their three granddaughters. The magistrate court dismissed the petition, ruling: (1) the Nelsons lacked standing to file a petition under Idaho Code section 32-719 (Idaho's grandparent visitation statute); and (2) even if the Nelsons had standing, it would still grant summary judgment in favor of the girls' parents, Stephanie and Brian Evans, because the Nelsons would be unable to overcome the presumption that fit parents make decisions in their children's best interests. On intermediate appeal, the district court affirmed the magistrate court's rulings. For the reasons discussed below, we reverse the district court's decision and remand for further proceedings.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Although seemingly a simple question of statutory interpretation, at its essence this case concerns a profound family tragedy that has left three young girls caught in the middle of a legal battle between four people who love them. The Nelsons are the grandparents of three girls, ages

1

thirteen, eleven, and eight ("the granddaughters"). The Nelsons' daughter, Stephanie Evans, and their son-in-law, Brian Evans, are the girls' parents.

The evidence submitted by the Nelsons on summary judgment shows that from 2006 to 2015, the Nelsons maintained a close relationship with their granddaughters while living in California.[1] The Nelsons were present for the births of all three of their granddaughters, they enjoyed family vacations in exotic locations together, and they visited their granddaughters several times a week. The Nelsons were also actively involved in their granddaughters' day-to-day lives, from attending swimming lessons, gymnastic lessons, and tennis lessons to hosting weekly playdates and occasional overnight visits. The Nelsons also paid thousands of dollars towards their granddaughters' future college expenses, which the Evanses admitted to using, at least in part, for their own expenses.

In 2005, prior to the birth of their first daughter, the Evanses wanted to purchase a house in California but had difficulty obtaining the proper financing. As a result, the Nelsons agreed to jointly purchase the house with them. In April 2015, the Evanses informed the Nelsons that they intended to sell the house and move to Idaho. The Nelsons asked that they reconsider because the Nelsons, who had paid off their half of the house debt, would lose a significant amount of money if the house were sold at that time due to market conditions. Over the ensuing month, the Nelsons sought to retain their fifty percent interest in the house either by renting it out or by purchasing the Evanses' fifty percent interest. Negotiations between the Nelsons and the Evanses became contentious. The Nelsons allege that the Evanses threatened to cut-off visitation with the girls if the Nelsons interfered. After learning the Evanses were already in escrow with a third party, the Nelsons filed a quiet title action and recorded a lis pendens against the house, thereby putting the sale with the third party on hold. The Nelsons and the Evanses eventually reached an agreement whereby the Nelsons agreed to buy out the Evanses' one-half interest in the house for the same net proceeds that the Evanses would have received from the third party. Nevertheless,

---

[1] The Evanses' version of the facts has not been recited in detail here due to the procedural posture of the case and the nature of the magistrate court's ruling on summary judgment. In fairness, it should be noted that the Evanses disagree with the Nelsons' rosier version of their relationship, and allege that "there were many ups and downs in the relationship," that the Nelsons frequently "insert[ed] themselves inappropriately into their lives," and that "[d]espite the Nelsons' years of attempting to exert control over the Evans['s] private family affairs, the parties lived somewhat amicably for several years—due in large part to the Evanses willingness to acquiesce and bend to the Nelsons' wishes." Nevertheless, the magistrate court treated most of the Nelsons' material allegations as true in its Findings of Fact, Conclusions of Law, and Order, under the heading "Findings of Fact Considered in a Light Most Favorable to the Nelsons."

the Evanses decided they no longer wanted to maintain a relationship with the Nelsons and requested that they stop all further communications with their granddaughters. The Nelsons attempted to reconcile, all to no avail.

After the Evanses moved to Kootenai County, Idaho, the Nelsons filed a "Petition for Grandparent/Grandchild Visitation" seeking reasonable visitation rights with their granddaughters pursuant to statutory law (I.C. § 32-719) and common law (*Stockwell v. Stockwell*, 116 Idaho 297, 775 P.2d 611 (1989)). The Nelsons also asserted a cause of action on behalf of their granddaughters.

In response, the Evanses filed a motion to dismiss and/or for summary judgment. The Evanses argued that the magistrate court should dismiss the Nelsons' petition because (1) section 32-719 does not apply outside of divorce, (2) section 32-719 is unconstitutional, and (3) the standards in Idaho Code section 32-1013 have not been met by section 32-719. The Evanses also requested that the magistrate court grant summary judgment in their favor because there is no common law cause of action for grandparent visitation since (1) the Nelsons have not proved that the granddaughters have been harmed by the Evanses, and (2) the relationship between the Nelsons and the granddaughters does not override the fundamental right of parents to decide what is best for their children.

After a hearing on the matter, the magistrate court entered findings of fact and conclusions of law.[2] The magistrate court made several findings. First, the court found that the Nelsons did not have a common law cause of action under *Stockwell* because the Evanses are part of an "intact marital parental relationship" and "there are no allegations that the children have been abandoned, that the natural parents are unfit or that the children have been in the grandparent's custody for an appreciable period of time." Second, the court found that the Nelsons lacked standing to assert a cause of action on behalf of their granddaughters because "the children have no constitutional right to visit or associate with people as they choose." Finally, the court found that the Nelsons did not have standing under section 32-719 because the Evanses "are in an intact marital-parental relationship and there is not now nor has there ever

---

[2] The Court notes that judges typically do not make findings of facts and conclusions of law in summary judgment rulings. Rather, the proper response to a summary judgment motion is to ascertain whether the moving party has established that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

been an action for divorce, child custody, paternity, guardianship, or De Facto Custodian[ship]." The magistrate court also held that, even if it were to find the Nelsons had standing under section 32-719, "the record is devoid of any material facts sufficient to overcome the fundamental constitutional presumption that fit parents make decisions in the best interests of their children." Accordingly, the magistrate court dismissed the Nelsons' petition for grandparent visitation. The Nelsons filed a motion for reconsideration, which the magistrate court denied.

On May 31, 2018, the Nelsons appealed to the district court. After a hearing on the matter, the district court entered a memorandum opinion affirming the magistrate court's dismissal of the Nelsons' petition for lack of standing. The district court reiterated that "[section] 32-719 d[oes] not allow an independent cause of action for grandparent visitation when the parents are in an intact marital-parental relationship and there has never been an action for divorce, child custody, paternity, guardianship or de facto custodian." The district court also affirmed the magistrate court's grant of summary judgment in favor of the Evanses because the record was devoid of any facts challenging the presumption that the Evanses, as fit parents, were acting in their children's best interests when they decided to cut all ties with the Nelsons. The Nelsons timely appealed.

## II. STANDARD OF REVIEW

The Nelsons ask this Court to review the district court's decision on intermediate appeal. In *Pelayo v. Pelayo*, we clarified the standard for reviewing such cases:

> When this Court reviews the decision of a district court sitting in its capacity as an appellate court, the standard of review is as follows:
>
>> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.
>
> *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012) (quoting *Losser v. Bradstreet*, 145 Idaho 670, 672, 183, P.3d 758, 760 (2008)). Thus, this Court does not review the decision of the magistrate court. *Id.* "Rather, we are 'procedurally bound to affirm or reverse the decisions of the district court.' " *Id.* (quoting *State v. Korn*, 148 Idaho 413, 514 n.1, 224 P.3d 480, 482 n.1 (2009)).

154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013).

Inasmuch as this case concerns an order granting summary judgment, "the standard of review used by this Court is the same standard used by the [lower] court in ruling on the motion." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.F.L.P. 505(C). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Marek v. Hecla, Ltd.*, 161 Idaho 211, 220, 384 P.3d 975, 984 (2016); *see also Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016) ("If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate."). "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor." *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 209, 76 P.3d 951, 953 (2003). Moreover, "[w]hen this Court reviews an order dismissing an action pursuant to I.R.C.P. 12(b)(6),[3] we apply the same standard of review we apply to a motion for summary judgment." *Losser*, 145 Idaho at 672–73, 183 P.3d at 760–61

### III. ANALYSIS

**A. Idaho Code section 32-719 does not restrict when a grandparent may petition a court for visitation rights.**

This case hinges on the interpretation of Idaho Code section 32-719. The Nelsons contend that section 32-719 unambiguously places no restrictions on when a grandparent may petition a court for visitation rights. The Evanses, on the other hand, contend that section 32-719 restricts grandparent petitions to cases where the children live in a "non-intact family,"[4] as evidenced primarily by the statute's location in chapter 7 of the Idaho Code, which covers "Divorce Actions." We hold that the plain language of section 32-719 does not restrict its applicability to divorce actions and non-intact families, notwithstanding its location in Chapter 7

---

[3] Idaho Rule of Civil Procedure 12(b)(6) mirrors the language from Idaho Rule of Family Law Procedure 502(A)(6).
[4] The Evanses define "intact family" to mean "a married, cohabiting couple where both individuals are biological parents of a child or children, where the child or children live full time with those biological parents, and there is no valid custody action affecting the children." This definition would exclude many families, such as those with adopted children. Black's Law Dictionary defines an "intact family" as "[a] family in which both parents live together with their children." FAMILY, Black's Law Dictionary (11th ed. 2019).

of the Idaho Code. Accordingly, section 32-719 provides grandparents with an independent cause of action to seek visitation rights.

We initially note that the constitutionality of section 32-719 is not at issue on appeal. Although the issue was raised below, it was not ruled on by either the magistrate court or district court. The Evanses state that they "have abandoned their argument that § 32-719 is unconstitutional," and the Nelsons agree that "neither of the parties to this appeal has included the constitutionality of Idaho Code § 32-719 in their lists of issues for appeal (or cross-appeal)." Accordingly, our decision today is limited to interpreting section 32-719.

"The interpretation of a statute is a question of law this Court reviews de novo." *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019).

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*State v. Dunlap*, 155 Idaho 345, 361–62, 313 P.3d 1, 17–18 (2013).

On the other hand, "if the statute is ambiguous, this Court must engage in statutory construction to ascertain legislative intent and give effect to that intent." *Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cty.*, 159 Idaho 84, 87, 356 P.3d 377, 380 (2015). However, the courts "are not free to rewrite a statute under the guise of statutory construction." *State v. Doe*, 147 Idaho 326, 329, 208 P.3d 730, 733 (2009).

> To ascertain the legislature's intent, this Court examines the literal words of the statute, the context of those words, the public policy behind the statute, and the statute's legislative history. [*State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999)]. Courts must construe a statute "under the assumption that the legislature knew of all legal precedent and other statutes in existence at the time the statute was passed." *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 150, 879 P.2d 1078, 1083 (1994). Finally, Idaho has recognized the rule of *expressio unius est exclusio alterius*—"where a constitution or statute specifies certain things, the designation of such things excludes all others." *Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978).

*Saint Alphonsus Reg'l Med. Ctr.*, 159 Idaho at 87, 356 P.3d at 380.

"When the meaning of a statute is unclear, resort may be had to the legislative titles and statutory headings to aid in ascertaining legislative intent." *Burch v. Hearn*, 116 Idaho 956, 957, 782 P.2d 1238, 1239 (1989). However, "the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–29 (1947). "For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain." *Id.* at 529. Additionally, statutes relating to the same subject matter—or those that are *in pari materia*—must be construed together. *In re Adoption of Doe*, 156 Idaho 345, 350, 326 P.3d 347, 352 (2014). Accordingly, sometimes "[a] reading of the provision in the context of the entire chapter is [ ] enlightening." *New Phase Inv., LLC v. Jarvis*, 153 Idaho 207, 210, 280 P.3d 710, 713 (2012).

Here, our first step is to examine the literal words of section 32-719 to determine whether they support the parties' differing interpretations. Section 32-719 provides in its entirety:

> The district court may grant reasonable visitation rights to grandparents or great-grandparents upon a proper showing that the visitation would be in the best interests of the child.

Based on a plain reading of the statute, we agree with the Nelsons that section 32-719 is unambiguous and does not restrict when a grandparent may petition a court for visitation. According to the statute's literal words—or lack thereof—a grandparent may petition a court for reasonable visitation at any time.[5]

We acknowledge that section 32-719 is housed in Chapter 7 of the Idaho Code, which is entitled "Divorce Actions." However, only when the meaning of the statute is unclear, and thus ambiguous, may "resort [ ] be had to the legislative titles and statutory headings to aid in ascertaining legislative intent." *Burch*, 116 Idaho at 957, 782 P.2d at 1239. The same logic applies to chapter headings. Moreover, if the legislature intended section 32-719 to restrict grandparent petitions to divorced families, as suggested by the Evanses and the lower courts in this appeal, it could have drafted section 32-719 with such limiting language as it has done with several other sections within the same chapter.[6] Yet section 32-719 does not include such a

---

[5] Although section 32-719 does not place any limitations on when a grandparent may *petition* a court for visitation, we have placed stringent requirements on when a court may *grant* visitation, as discussed below. *See Leavitt v. Leavitt*, 142 Idaho 664, 671, 132 P.3d 421, 428 (2006).

[6] *See, e.g.*, I.C. § 32-702 ("In actions for divorce . . . ."); I.C. § 32-704(1) ("While an action for divorce is pending . . . ."); I.C. § 32-705(1) ("Where a divorce is decreed . . . ."); I.C. § 32-706(1) ("In a proceeding for divorce or child support . . . ."); I.C. § 32-712 ("In case of divorce . . . ."); I.C. § 32-713 ("The court, in rendering a decree of divorce

limitation. Accordingly, because section 32-719 is unambiguous, we will refrain from engaging in statutory construction.

In sum, the district court's interpretation of section 32-719 is simply not supported by the plain text of the statute. In light of the unambiguous language in section 32-719 that allows "[t]he district court to grant reasonable visitation rights to grandparents . . . upon a proper showing that the visitation would be in the best interest of the child," Idaho's grandparent visitation statute plainly allows the Nelsons to petition the court for reasonable visitation regardless of whether there is a pending divorce action.

**B. The district court erred in affirming the magistrate court's grant of summary judgment for the Evanses because there is a genuine issue of material fact as to whether the Evanses' decision to terminate all contact between the Nelsons and their children was in their children's best interests.**

The magistrate court dismissed the Nelsons' petition because it found they did not have standing under Idaho Code section 32-719 to file a petition in the first place. As we explained above, the magistrate court erred in reaching this conclusion. However, the magistrate court held in the alternative that, even if it were to find the Nelsons had standing, summary judgment in favor of the Evanses was appropriate because "the record is devoid of any material facts sufficient to overcome the fundamental constitutional presumption that fit parents make decisions in the best interests of their children." The district court affirmed the magistrate court's alternative holding. The district court's decision was erroneous.

    *i.       The status of grandparent visitation rights post-*Troxel *and* Leavitt.

Because our analysis of the lower courts' alternative summary judgment decisions must be viewed in light of the principles announced by the U.S. Supreme Court in *Troxel v. Granville*, 530 U.S. 57, 68 (2000), recognized by this Court in *Leavitt v. Leavitt*, 142 Idaho 664, 671, 132 P.3d 421, 428 (2006), and codified by the Idaho Legislature in Idaho Code sections 32-1010–1013, we first address those principles here.

In *Troxel*, the U.S. Supreme Court held that awarding visitation to a non-parent, over the objections of a fit parent, is subject to constitutional limitations. The *Troxel* Court was confronted with a statute that allowed "any person" to petition a court for visitation rights "at any time" and authorized the court to grant such visitation rights whenever "visitation may serve the

---

. . . ."); I.C. § 32-716 ("In any action of divorce . . . ."); I.C. § 32-717(1) ("In an action for divorce . . . ."); I.C. § 32-717C ("When, in any divorce proceeding or upon request for modification of a divorce decree . . . .").

8

best interests of the child." 530 U.S. at 67 (quoting Wash. Rev. Code Ann. § 26.10.160(3)). The U.S. Supreme Court held that the application of Washington's grandparent visitation statute violated a parent's due process right to make decisions concerning the care, custody, and control of her daughters. *Id.* at 75. In a plurality decision containing six separate opinions, the U.S. Supreme Court imposed three constitutional constraints on the application of grandparent visitation statutes: (1) there is a presumption that fit parents act in the best interests of their children; (2) the court must accord "special weight" to the fit parent's decision to limit or deny grandparent visitation; and (3) the court may not "infringe on the fundamental right of parents to make child rearing decisions simply because [it] believes a 'better' decision could be made." *Id.* at 68–73.

The Idaho Legislature codified these principles in Idaho Code sections 32-1010–1013. Sections 32-1010–1013 describe those fundamental rights rooted in the due process of law guaranteed by the Idaho and U.S. Constitutions. I.C. § 32-1010(4). Section 32-1010 provides, in part, that "[g]overnment efforts that restrict or interfere with [certain] fundamental [parental] rights are only permitted if that restriction or interference satisfied the strict scrutiny standard provided in section 32-1013, Idaho Code." I.C. § 32-1010(5). These rights include a parent's right "to make decisions concerning the care, custody, and control" of the child over which the parent has custody. I.C. §§ 32-1010, 1011.

Additionally, this Court recognized in *Leavitt* that the trial court's decision in grandparent visitation cases, although committed to the sound discretion of the trial court, must be guided by the principles announced in *Troxel*, and that the rebuttable presumption in favor of the parents' decision could be rebutted only by a showing of "clear and convincing" evidence. *Leavitt*, 142 Idaho at 670–71, 132 P.3d at 427–28 ("The magistrate court recognized Leavitt's fundamental right and afforded Leavitt the presumption that a fit parent acts in a child's best interests.").

In short, although the rebuttable presumption in favor of a fit parents' decision is a high hurdle for grandparents to clear, it is not an insurmountable one. Accordingly, a grandparent seeking visitation rights is entitled to an opportunity to rebut the threshold presumption that fit parents act in the best interests of their children by producing clear and convincing evidence that proves visitation would be in the child's best interests. When analyzing such cases, the trial court must accord the decisions of fit parents "special weight" and cannot permit visitation merely because it disagrees with the parents' decision to deny visitation.

*ii.* *There is a genuine issue of material fact as to whether the Evanses' decision to terminate all contact between the Nelsons and their children was in their children's best interests.*

The Nelsons contend that the lower courts erred in granting summary judgment because they submitted evidence that rebutted the presumption that the Evanses' decision to terminate all contact was in their children's best interests. The Nelsons point to the hundreds of pages of evidence they submitted—including text messages, pictures, timelines, and an affidavit from a child psychologist—that allegedly "show[s] . . . the Evans['s] decision to abruptly terminate the Nelsons['s] relationship with their grandchildren was not in the grandchildren's best interests." The Evanses contend that the evidence does not overcome the presumption that their decision was in their children's best interests because "every grandparent petitioning for visitation with a child has at least a close and loving relationship with the child, which relationship brings with it numerous photo and texting opportunities." While we cannot comment as to the circumstances that might exist in every case conceivably brought by grandparents, we simply hold that in this case the totality of the evidence submitted by the Nelsons in response to the Evanses' motion establishes at least a genuine issue of material fact whether the Evanses' decision to terminate all contact between the Nelsons and their children was in their children's best interests.

Here, the magistrate court initially found that "the record is devoid of *any* material facts sufficient to overcome the fundamental constitutional presumption that fit parents make decisions in the best interest of their children." (Emphasis added). The magistrate court's finding was guided by the principles announced in *Troxel*, recognized by this Court in *Leavitt*, and codified by the Idaho Legislature in sections 32-1010–1013. Yet the magistrate court's decision appears to stop there; it is devoid of any analysis addressing why the hundreds of pages of evidence submitted by the Nelsons was insufficient to overcome that presumption. Rather, the magistrate court granted summary judgment in the Evanses' favor primarily because it found that the Evanses are fit parents, which was undisputed:

> The Nelson[s] concede that the parents have not abused, abandoned or neglected the children nor does the court find there is any argument that Stephanie and Brian Evans have not adequately cared for them. Rather, the court has found that they are fit parents. In addition, there is no allegation that the grandchildren have been in the Nelson[s]'s custody for an appreciable period of time, that they have resided with their grandparents in a stable relationship, or that the Nelsons are their De Facto Custodians.

10

Simply finding that the Evanses are fit parents is only part of the *Troxel* analysis. By ending its analysis at this point, the magistrate court effectively transformed a rebuttable presumption—that fit parents act in their children's best interests—into an irrebuttable one. The evidence submitted by the Nelsons must still be examined to determine if there is a genuine issue of material fact as to whether the Evanses' decision, notwithstanding their fitness as parents, was in their children's best interests. Although the Nelsons will have to overcome the clear and convincing evidence standard applicable to this case, the well-established standard on summary judgment still applies: the trial court must "liberally construe[] the record in favor of the party opposing the motion for summary judgment and draw[] any reasonable inferences and conclusions in that party's favor." *Robison*, 139 Idaho at 209, 76 P.3d at 953.

After reviewing the evidence submitted by the Nelsons, we hold that the facts alleged and the evidence submitted establish a genuine issue of material fact whether the Evanses' decision to terminate all contact between the Nelsons and their children was in fact in their children's best interests. The Nelsons kept meticulous records and submitted hundreds of pages of evidence documenting the substantial and close relationship that existed between the Nelsons and their granddaughters before the move to Idaho. Included are copies of text messages between the Nelsons and their granddaughters, as well as photographs of vacations, after-school activities, playdates, and birthdays. The Nelsons provided copies of checks sent to the Evanses for the support of their granddaughters. Importantly, the Nelsons also submitted the affidavit of Dr. Mary Dietzen, a child psychologist, who opined that "it is detrimental to the health of the grandchildren to terminate an otherwise established and healthy grandparent/grandchild relationship," which "can cause harm . . . to the child's self-esteem." Dr. Dietzen formed this opinion after having reviewed the Nelsons' petition, the Evanses' response to the petition, the text messages and pictures between the Nelsons and their granddaughters, and the chronology of events leading up to the sale of the California house. Accepting the Nelsons' evidence as true for purposes of summary judgment, we conclude that there is a genuine issue of material fact whether the Evanses' decision to terminate all contact between the Nelsons and their children — no matter how fit the Evanses may be—was in their children's best interests. Accordingly, the magistrate court should have provided the Nelsons with an opportunity to present this evidence, subject to the requirements of *Troxel* and *Leavitt*, at an evidentiary hearing to determine the

11

same. Therefore, we hold that the district court erred in affirming the magistrate court's grant of summary judgment in favor of the Evanses.

**C. The Evanses are not entitled to attorney fees on appeal.**

The Evanses request attorney fees on appeal pursuant to Idaho Rules of Family Law Procedure 901 and 908, Idaho Code section 12-121, and Idaho Appellate Rules 40 and 41. Rule 908 provides that attorney fees may be awarded to the prevailing party under section 12-121 "only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.F.L.P. 908(A). We hold that the Evanses are not entitled to attorney fees because they are not the prevailing party in this appeal. Additionally, although the Nelsons did not request attorney fees or costs on appeal, they are entitled to costs pursuant to Idaho Appellate Rule 40(a) because they are the prevailing party on appeal.

## IV.    CONCLUSION

While we acknowledge that since *Troxel* and *Leavitt* were decided, the legal deck has been stacked heavily against grandparents seeking to establish visitation rights, we nevertheless conclude that the evidence in the record is sufficient to permit the Nelsons an opportunity to play out their hand in court. Therefore, we reverse the decision of the district court affirming the magistrate court's dismissal of the Nelsons' petition for grandparent visitation. We remand this matter to the district court with instructions to remand it to the magistrate court for an evidentiary hearing on the merits of the Nelsons' petition. We award costs to the Nelsons.

Chief Justice BURDICK, Justices BRODY, BEVAN and STEGNER **CONCUR.**