**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 51842 and 52307**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MATTHEW JASON BLAZEK,** | ) | **November 2024 Term** |
| | ) | |
| **Defendant-Appellant.** | ) | **Opinion Filed: December 5, 2024** |
| | ) | |
| **STATE OF IDAHO,** | ) | |
| | ) | **DECISION ON ORDER TO SHOW CAUSE** |
| **Plaintiff-Respondent,** | ) | |
| | ) | |
| **v.** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **CHARLENE LAINE SMITH,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Erik R. Lehtinen, State Appellate Public Defender, Boise, argued.

Eric D. Fredericksen, State Public Defender, Boise, argued.

Bryan F. Taylor, Canyon County Prosecuting Attorney, Caldwell. Aaron J. Bazzoli argued.

Jan M. Bennetts, Ada County Prosecuting Attorney, Boise. Shawna Dunn argued.

---

PER CURIAM

These consolidated cases are before us following a hearing on this Court's Order to Show Cause Why State Public Defender, State Appellate Public Defender, and/or Counties Should not be Financially Responsible for Cost of Preparing Transcript on Appeal for Indigent Defendants ("Order to Show Cause"). The Order to Show Cause was issued to resolve a single question: As of October 1, 2024, the effective date of the State Public Defender Act's transfer of financial and

legal responsibility for the provision of indigent public defense from Idaho's forty-four counties to the state, *see* I.C. § 19-6008, who is financially responsible for the costs of preparing transcripts on appeal for indigent defendants? For the reasons set forth below, we hold that the Office of the State Public Defender bears that financial responsibility.

## I. FACTS AND PROCEDURAL HISTORY

### A. *State v. Blazek*, Docket No. 51842-2024

An Ada County jury found Matthew Blazek guilty of multiple felony crimes. On May 6, 2024, Blazek's privately retained counsel filed a notice of appeal from the judgment of conviction and requested preparation of the "standard transcript." Counsel also filed a motion for appointment of the State Appellate Public Defender ("SAPD") and a motion for preparation of the appellate record at public expense, both of which the district court granted.

On May 29, 2024, the SAPD filed an amended notice of appeal identifying the specific transcripts it wanted prepared for Blazek's appeal. When the Clerk's Record and Reporter's Transcript were served on the parties on September 3, 2024, a portion of the trial transcript the SAPD had requested in the amended notice of appeal was missing. Consequently, on October 1, 2024, the SAPD filed a timely objection to the record and requested preparation of the missing transcript. Contemporaneously with its objection, the SAPD submitted a proposed order that indicated the missing transcript would "be prepared at county expense." The district court signed the proposed order on October 9, 2024, but it struck the "county expense" language and replaced it with language directing that the transcript "be prepared at the expense of the State Appellate Public Defender's Office."

On October 24, 2024, the SAPD filed a motion with this Court requesting "an order clarifying financial responsibility for preparation of transcripts for appeals involving indigent criminal defendants." In its motion, the SAPD observed that, prior to October 1, 2024, the costs of preparing appeal transcripts for indigent defendants had always been borne by Idaho's counties. The district court did not explain its reasons for ordering the SAPD to pay for the transcript it requested. However, the SAPD inferred the order was based on section 19-6008 of the State Public Defender Act, which, as of October 1, 2024, shifted the "financial and legal obligation to provide indigent public defense"—including any "expense necessary for indigent defense services"—from the counties to the state. I.C. § 19-6008(1)(a) and (b). Although the SAPD acknowledged that the language of section 19-6008(1) "is so broad on its face that it could be construed as including

transcript costs," it argued that such a construction is unwarranted because Idaho Code section 1-1105(2)—a statutory provision predating the State Public Defender Act—specifically states that payment for appeal transcripts for indigent defendants is to be made "from the county treasury." Relying on section 1-1105(2), the SAPD submitted that neither it nor the State Public Defender are financially responsible for the preparation of appeal transcripts for indigent defendants; instead, the SAPD maintained that the responsibility for such costs remains with the counties. Alternatively, the SAPD argued that because court reporters are employed by the courts and are integral to the courts' business, the costs of transcripts for indigent defendants should be borne by the judiciary.

**B.** *State v. Smith*, **Docket No. 52307-2024**

In a Canyon County case in which she was represented by appointed counsel, Charlene Smith pled guilty to forgery. On October 7, 2024, the Office of the State Public Defender ("SPD") filed a notice of appeal on Smith's behalf requesting transcripts of Smith's change of plea and sentencing hearings. The SPD also filed a motion for appointment of the SAPD, which the district court granted.

On October 9, 2024, the Idaho Supreme Court Clerk's Office provided notice that Smith's appeal was being suspended for fourteen days "for the Court Reporter(s) or Clerk of the District Court, as appropriate, to file a Notice of Transcript Deposit with the District Court confirming payment of the estimated fees for preparation of any requested transcript, pursuant to I.A.R. 24(c) and (d)." The notice further provided:

> If payment for the transcript has not yet been made to the Court Reporter or Clerk, the Court Reporter shall provide an invoice to the attorney who filed the **original Notice of Appeal** with the District Court on October 7, 2024. **Failure to pay the estimated fee may result in the appeal proceeding without a transcript**.

(Emphasis in original.)

On October 28, 2024, the Clerk of the Court received confirmation that the court reporters responsible for preparation of the requested appeal transcripts had each invoiced the SPD for the estimated transcript fees on October 11, 2024. The court reporters also advised that, as of October 28, 2024, the transcript fees had not been paid.

**C. Order to Show Cause**

On October 31, 2024, having reviewed the motion to clarify filed by the SAPD in *Blazek* and having been advised that the transcript fees in *Smith* had not been paid, this Court entered an order consolidating the *Blazek* and *Smith* appeals for purposes of an order to show cause hearing

and this opinion. Acting pursuant to Idaho Appellate Rule 48 and Idaho Rule of Civil Procedure 72, the Court also issued an Order to Show Cause Why State Public Defender, State Appellate Public Defender, and/or Counties Should not be Financially Responsible for Cost of Preparing Transcript on Appeal for Indigent Defendants. The Order to Show Cause ordered State Public Defender Eric D. Fredericksen, State Appellate Public Defender Erik R. Lehtinen, Ada County Prosecuting Attorney Jan M. Bennetts ("Ada County"), and Canyon County Prosecuting Attorney Bryan Taylor ("Canyon County") to appear and show cause why their respective offices should not be financially responsible for the transcript fees in *Blazek* and *Smith*.

At the Court's direction, the SPD, SAPD, Ada County, and Canyon County (collectively, "the parties") each filed a memorandum in response to the Order to Show Cause and addressed the arguments raised by the SAPD in its motion to clarify. The parties subsequently appeared before the Court at the Order to Show Cause hearing on November 8, 2024, and each of them presented argument. None of the parties elected to produce testimony or evidence at the hearing. *See* I.R.C.P. 72(b).

## II.    ANALYSIS

This case provides the Court's first opportunity to address the State Public Defender Act (hereinafter "SPD Act" or "the Act"), Idaho Code sections 19-6001 through 19-6020, and, more particularly, the provisions of the Act that require the state to assume financial responsibility for the delivery of indigent public defense services. All parties to the show-cause proceeding agree that, until recently, the financial responsibility for indigent public defense services, including for the payment of transcripts on appeal for indigent defendants, has solely rested with Idaho's counties. *See*, *e.g.*, I.C. § 1-1105(2) (directing that payment for appeal transcript for indigent criminal defendant be made "from the county treasury"). The question before the Court is whether the counties continue to bear that responsibility or whether, beginning with the SPD Act's October 1, 2024, transfer of indigent public defense services to the newly created Office of the State Public Defender, the state now does. Based upon our review of the relevant statutory provisions, we conclude that when appeal transcripts are necessary in indigent defense cases, the costs of preparing those transcripts must be paid by the SPD.

4

**A. The plain language of the State Public Defender Act unambiguously requires the state to assume financial responsibility for the costs of preparing transcripts on appeal for indigent defendants on and after October 1, 2024.**

The State Public Defender Act, passed by the Idaho Legislature in 2023, transformed the manner in which indigent public services are delivered in Idaho. *See* 2023 IDAHO SESS. LAWS 660. As of October 1, 2024, what once was the responsibility of Idaho's individual counties to provide indigent public defense is now the responsibility of a single state-funded agency—*i.e.*, the Office of the State Public Defender. *See* I.C. §§ 19-6001 through 19-6020. The scope of this transfer of responsibility is laid out in Idaho Code section 19-6008, which provides in relevant part as follows:

> 19-6008. INDIGENT PUBLIC DEFENSE — ROLE OF COUNTIES — PUBLIC DEFENSE COMMISSION RULES — TRANSITION. (1) Notwithstanding any provision of law to the contrary, on and after October 1, 2024:
>
> (a) *All counties are released from any further financial or legal obligation to provide indigent public defense. On and after such date, the state assumes the full financial and legal obligation to provide indigent public defense pursuant to the sixth amendment to the United States constitution and section 13, article I of the constitution of the state of Idaho.*
>
> (b) This release of financial and legal obligation to provide indigent public defense includes the release of any requirement for counties: to employ or contract with defending attorneys, investigators, social workers, legal assistants, or other personnel necessary to provide indigent public defense; to provide office furnishings, equipment, office materials, or office supplies; to provide information technology equipment, information technology software, communication equipment, communication software, equipment, or software licenses or subscriptions; to provide general office technology or equipment; or to assume any other expense necessary for indigent defense services on and after October 1, 2024.

I.C. § 19-6008(1) (emphasis added). Pursuant to this provision, the counties are no longer required to provide indigent public defense services; instead, the state has assumed both the legal *and* financial obligation to provide such services, including the obligation to "assume any … expense necessary for indigent defense services on and after October 1, 2024." *Id.*

Despite the broad language of Idaho Code section 19-6008(1), the SPD and SAPD argue that the state is not responsible for the costs of preparing transcripts on appeal for indigent defendants. They contend that neither section 19-6008(1), nor any other provision of the SPD Act, specifically identifies the cost of appeal transcripts as an expense necessary for indigent defense that must be borne by the state. Instead, they argue that the responsibility for such costs remains governed by Idaho Code section 1-1105(2):

> [W]hen such transcript is requested by a defendant or his attorney on an appeal in a criminal action where after conviction, it appears to the satisfaction of the district court that the accused is poor and unable to procure such transcript, the court must direct payment to such court reporter of the page charge in this subsection provided, *from the county treasury.*

(Emphasis added). Because section 1-1105(2) explicitly addresses transcript costs and section 19-6008(1) does not, the SPD and SAPD argue that section 1-1105(2) controls and requires that the costs of preparing appeal transcripts for indigent defendants continue to be paid by the counties. In support of their position, the SPD and SAPD rely on the "basic tenet of statutory construction" that "the more specific statute or section addressing the issue controls over the statute that is more general." *Valliant Idaho, LLC v. JV L.L.C.*, 164 Idaho 280, 289, 429 P.3d 168, 177 (2018) (citation omitted).

Unsurprisingly, Ada County and Canyon County (collectively, "the Counties") disagree that the costs of preparing appeal transcripts in indigent public defense cases remain a county expense. The Counties argue that the legislature's intent in enacting the SPD Act was to transfer the responsibility for indigent public defense from the counties to the state, and that section 19-6008(1) effectuates that intent by clearly and unambiguously absolving the counties of any financial or legal responsibility for the provision of indigent public defense services on or after October 1, 2024, "[n]otwithstanding any provision of law to the contrary." I.C. § 19-6008(1)(a). Because Idaho Code section 1-1105(2) predates the SPD Act, the Counties submit the portion of section 1-1105(2) that requires counties to pay for appeal transcripts for indigent defendants is no longer of any effect. They also argue that even if sections 1-1105(2) and 19-6008(1) conflict, principles of statutory construction mandate that the more recent statute controls.

As in any case where the meaning of a statute is at issue, our objective "is to derive the intent of the legislative body that adopted the act." *Nelson v. Evans*, 166 Idaho 815, 820, 464 P.3d 301, 306 (2020) (quoting *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)). Achieving that objective "begins with an examination of the literal words of a statute." *Hastings v. Idaho Dep't of Water Res.*, 173 Idaho 630, ___, 547 P.3d 1190, 1197 (2024) (quoting *St. Luke's Health Sys., Ltd. v. Bd. of Comm'rs of Gem Cnty.*, 168 Idaho 750, 755-56, 487 P.3d 342, 347-48 (2021)). We must consider the statute as a whole and give words "their plain, usual, and ordinary meanings." *Idaho State App. Pub. Def. v. Fourth Jud. Dist. Ct.*, 173 Idaho 140, ___, 540 P.3d 311, 324 (2023) (quoting *Reclaim Idaho v. Denney*, 169 Idaho 406, 427, 497 P.3d 160, 181 (2021)). We

must also "give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *Id*. (quoting *Reclaim Idaho*, 169 Idaho at 427, 497 P.3d at 181). "When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction." *Nelson*, 166 Idaho at 820, 464 P.3d at 306 (quoting *Dunlap*, 155 Idaho at 361-62, 313 P.3d at 17-18).

The plain language of Idaho Code section 19-6008(1) is clear and unambiguous and evidences the legislature's intent to transfer *all* legal and financial responsibility for the provision of indigent public defense services from the counties to the state beginning on October 1, 2024. On its face, the statute releases the counties from "*any further* financial or legal obligation to provide indigent public defense" and requires the state to assume the "*full* financial and legal obligation" for the provision of indigent public defense services. I.C. § 19-6008(1)(a) (emphasis added). That the legislature intended to fully release the counties from any financial or legal burden associated with the provision of indigent public defense is shown not only by the use of the words "any further" and "full" in section 19-6008(1)(a), but also by section 19-6008(1)(b)'s delineation of a broad list of legal services and expenses for which the counties are no longer responsible. Among other things, that provision explicitly releases the counties "of any requirement … to assume *any other expense necessary for indigent defense services* on and after October 1, 2024." I.C. § 19-6008(1)(b) (emphasis added).

Although the SPD and SAPD acknowledge that the "any other expense" language of section 19-6008(1)(b) could be construed as including the costs of preparing transcripts on appeal for indigent defendants, they argue that the language is ambiguous and that the ambiguity must be resolved by applying what they contend is a more specific statute. Specifically, they argue that because section 19-6008(1)(b) does not explicitly identify the costs of appeal transcripts as expenses for which the county is no longer responsible, the language of Idaho Code section 1-1105(2) that specifically states that payment for such transcripts must be made "from the county treasury" controls. We are unpersuaded.

In arguing that the language of section 1-1105(2) requiring counties to pay transcript costs "is still valid and enforceable," the SPD and SAPD ignore the language of section 19-6008(1), which states that the provisions of section 19-6008 apply "[*n*]*otwithstanding any provision of law to the contrary*." I.C. § 19-6008(1) (emphasis added). The language of section 1-1105(2) that requires counties to pay transcript costs for indigent defendants predates the SPD Act, including

section 19-6008(1) that releases the counties and imposes upon the state the financial and legal obligation to provide indigent public defense, including the requirement to "assume any other expense necessary for indigent services on and after October 1, 2024." I.C. § 19-6008(1)(a) and (b). *See also* I.C. § 19-6009(1), (3) (for cases falling within the scope of the Act, indigent defense services—including representation by an attorney, as well as the "services and facilities" necessary for such representation—must be provided at "public expense").

The relevant question, then, is not whether section 1-1105(2) is more specific, but whether transcript fees are "expense[s] necessary for indigent defense services" within the meaning of the SPD Act. If they are, counties are released from financial responsibility for such transcripts "notwithstanding" the contrary language of section 1-1105(2). *See Bolger v. Lance*, 137 Idaho 792, 796, 53 P.3d 1211, 1215 (2002) (by prefacing statute with the phrase "notwithstanding any statute or rule of court to the contrary," the "legislature made it absolutely clear that the provisions of [the statute] are to control over any contrary provisions" of existing law); *Allstate Ins. Co. v. Mocaby*, 133 Idaho 593, 601, 990 P.2d 1204, 1212 (1999) (by its "plain terms," a statute stating that attorney fees could only be recovered pursuant to Idaho Code sections 41-1839 and 12-123 "[n]otwithstanding any other provision of statute to the contrary" "limit[ed] the availability of an attorney fees award" to those statutory bases, to the exclusion of any other statute that might apply).

The SPD and SAPD argue "it is not at all clear that [court reporters'] transcripts are public defense expenses within the meaning of the SPD Act." Instead, they assert the expenses associated with preparing appeal transcripts for indigent defendants "are more appropriately described as court costs." In support of their position, the SPD and SAPD focus on the differences between what they perceive to be "defense functions" and "court functions," explaining:

> While transcripts may be *used by* public defenders, their creation is not a defense function, and they are not created to aid the defense. In contrast to experts or investigators, who are retained at the discretion of defense counsel specifically to aid in the defense of indigent clients, and who are directed in their efforts by defense counsel, court reporters are not retained by the defense, are not answerable to the defense, and do not work toward positive outcomes for the defendant. Accordingly, transcript costs are not inherently "indigent defense" costs. Rather, since transcripts are an indispensable part of *running a court system*, they are more appropriately described as court costs.

(Emphasis in original.) Because court reporters play an integral role in the functioning of the court system, the SPD and SAPD submit that it is not clear that the payment a court reporter receives

8

for preparing appeal transcripts in an indigent defense case is an expense necessary for indigent defense within the meaning of section 19-6008(1). Again, we are unpersuaded.

Nothing in the text of the SPD Act, or any other statute, suggests that the costs of preparing transcripts on appeal for indigent defendants are "court costs" instead of "indigent defense" costs. While court reporters work at the direction of the courts and provide valuable services to the judiciary, it is the parties, not the courts, who elect to file an appeal and bear the burden of requesting the transcripts they deem necessary for prosecution or defense of an appeal. *See*, *e.g.*, I.C. § 1-1105; I.A.R. 17(h), 24(d).

Furthermore, any argument that appeal transcript fees in indigent defense cases are not a necessary indigent defense expense is contrary to the language of the SPD Act and established precedent. Section 19-6002(3) of the Act broadly defines "Expenses" as "includ[ing] the expenses of investigation, experts, testing, and other pretrial preparation, trials, post-verdict motions, and post-conviction relief proceedings brought pursuant to the uniform post-conviction procedure act[.]" Although this non-exhaustive list of expenses does not specifically include appeal transcripts, other provisions of the SPD Act make clear that the right to representation under the Act includes "the necessary services and facilities of representation," including "in any appeal." I.C. § 19-6009(1), (2)(b).

Critically, Both the United States Supreme Court and this Court have already determined that relevant transcripts are among the necessary services and facilities of representation that must be provided to indigent defendants at public expense. In *Griffin v. Illinois*, 351 U.S. 12, 19 (1956), the United States Supreme Court held that the constitutional guarantees of due process and equal protection require that indigent defendants "be afforded as adequate appellate review as defendants who have money to buy transcripts." Thus, where a transcript is necessary to support an indigent defendant's appellate arguments, it must be provided at public expense. *Id*.; *see also Mayer v. City of Chicago*, 404 U.S. 189, 195 (1971) ("[T]he State must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to a defendant with resources to pay his own way"); *Draper v. State of Washington*, 372 U.S. 487 (1963) (state violated indigent defendants' due process rights by denying their requests for relevant appeal transcripts); *State v. Easley*, 156 Idaho 214, 218-20, 322 P.3d 296, 300-02 (2013) (discussing *Griffin*, *Draper*, and *Meyer*, and recognizing the due process right of indigent defendant to preparation of appeal transcripts at public expense where such transcripts are necessary for appellate review).

In addition to recognizing the constitutional underpinnings of an indigent defendant's right to relevant transcripts at public expense, we have also recognized that such right is conferred by statute. Of particular relevance here is our decision in *State v. Coronado*, 98 Idaho 421, 565 P.2d 1378 (1977). In that case, we were called upon to determine whether the statutory right of an indigent defendant to counsel included the right to a transcript at public expense. *Id.* at 423, 565 P.2d at 480. The statute in question was section 19-852, which was the predecessor to Idaho Code section 19-6009. Like section 19-6009, it contained language stating that an indigent defendant was entitled to "the necessary services and facilities of representation." I.C. § 19-852, *amended and recodified as* I.C. § 19-6009 by 2023 IDAHO SESS. LAWS 670. While we observed that "the right of a criminal defendant under the statute to pretrial services and facilities [was] not particularly defined," we had little difficulty concluding that "a transcript of the preliminary hearing, when alleged to be necessary to the defense, must certainly be included among those services and facilities provided by the state under the statute." *Coronado*, 98 Idaho at 423, 565 P.2d at 1380.

Although our decision in *Coronado* addressed an indigent defendant's right to a preliminary hearing transcript, we can discern no reasoned basis for concluding that while transcripts at the trial court level are among the "necessary services and facilities of representation" provided for in former section 19-852 and current section 19-6009, appeal transcripts are somehow excluded. In fact, the Court of Appeals has already interpreted former section 19-852 as entitling an indigent defendant to the preparation of an appeal transcript at public expense. *See State v. Callaghan*, 143 Idaho 856, 153 P.3d 12 (Ct. App. 2006) (district court abused its discretion by concluding defendant was not indigent and therefore not entitled to preparation of clerk's record and transcript at public expense under section 19-852). It must be presumed that when the legislature recodified the language of section 19-852 in the SPD Act, it was aware of this existing precedent. *See St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs of Ada Cnty.*, 146 Idaho 753, 758, 203 P.3d 683, 688 (2009) (the Court "assume[s] that the legislature knew of existing precedent at the time it passed or amended a statute").

Given the plain meaning of the language used in the SPD Act, and considering our prior precedent of which the legislature is presumed to have been aware, we conclude that the cost of preparing transcripts on appeal for indigent defendants is an "expense necessary for indigent defense services" within the meaning of Idaho Code section 19-6008(1)(b). Consequently, we hold

that "[n]otwithstanding any contrary provision of law, as of October 1, 2024," the obligation to pay for such transcripts has been fully assumed by the state.

**B. The Office of the State Public Defender is the state agency responsible for the costs of appeal transcripts in indigent defense cases.**

Having concluded that the state is responsible for the costs of appeal transcripts for indigent defendants, we must now determine which state agency bears that financial obligation. The district court in the *Blazek* case ordered the SAPD to pay for the transcript it requested in its objection to the record filed on October 1, 2024. Although we agree with the district court's decision that the state is obligated to pay for that transcript, we also agree with the SAPD that there is nothing in the text of either the SPD Act or the State Appellate Public Defender Act, Chapter 59, Title 19, Idaho Code, that suggests the costs of appeal transcripts are now an SAPD expense. To the contrary, both the language of the SPD Act and its legislative history indicate the legislature's intent that the SPD, not the SAPD, bear that financial responsibility.

As we have explained, the statutory language transferring the financial and legal responsibility for indigent public defense from the counties to the state is contained in section 19-6008(1). While the word "state" in that statute is not defined, there is no indication that the legislature intended it to refer to the SAPD. Section 19-6008 is a provision of the SPD Act—which deals exclusively with the creation, governance, duties, and role of the Office of the State Public Defender. *See* Chapter 60, Title 19, Idaho Code. Aside from a single provision excluding cases over which the SAPD has jurisdiction from the types of cases in which the SPD may be appointed, *see* I.C. § 19-6009(3), the SPD Act makes no reference to the SAPD. On the other hand, the Act specifically states that any reimbursement of indigent public defense expenses must be deposited "into the state public defense fund." I.C. §§ 19-6011(7), 19-6015(3). Reading the Act as a whole, it appears clear that the word "state," as used in section 19-6008(1)'s transfer of financial responsibility for indigent public defense, refers to the SPD.

Even if we were to find that the word "state" in section 19-6008(1) is ambiguous, employing tools of statutory construction would still lead us to conclude that the SPD bears the financial obligation for appeal transcripts in indigent defense cases. As we have explained:

> If the words of the statute are subject to more than one meaning, it is ambiguous, and this Court must construe the statute to mean what the legislature intended it to mean. To determine that intent, this Court examines not only the literal words of the statute, but also the reasonableness of the proposed construction, the public policy behind the statute, and its legislative history.

11

*JK Homes, LLC v. Brizzee*, ___ Idaho ___, 554 P.3d 568, 571 (2024) (internal quotation marks and brackets omitted) (quoting *Doe v. BSA*, 148 Idaho 427, 430, 224 P.3d 494, 497 (2009)).

The legislature enacted the SPD Act in response to concerns about perceived deficiencies in the provision of indigent public defense services under Idaho's county-based public defense system. *See* 2023 IDAHO SESS. LAWS 689. Preparations for a new statewide public defender's office began in 2022 with the passage of House Bill 735, which effectuated the transfer of money from the counties to the state for deposit in a new Public Defense Fund—a dedicated funding source for a new state indigent public defense system, which the legislature stated it intended to enact during the 2023 legislative session. *See* 2022 IDAHO SESS. LAWS 1012 ("[I]t is the intent of the Legislature that, before the adjournment sine die of the next regular session of the Idaho Legislature, a state indigent public defense system be enacted using the dedicated fund created in this act.").

As intended, the SPD Act was introduced during the 2023 session as House Bill 236. Among other things, the Statement of Purpose accompanying the legislation explained: "This bill is follow-up legislation to H 735aa (2022), and enacts a new model of public defense using the funding mechanism enacted in that bill." Statement of Purpose, H.B. 236, 67th Leg., 1st Reg. Sess. (Idaho 2023). Additionally, the Fiscal Note attached to the bill stated:

> Beginning in FY25, the Public Defense Commission is abolished, and the Office of the State Public Defender takes its place. The PDC's approximately $12 million annual appropriation (nearly all of which is a pass-through to counties for public defense) combined with the $36 million annually deposited into the State Public Defense Fund by the provisions of H 735aa (2022), results in a total of $48 million annually available for appropriation in the 2024 Legislative Session for indigent public defense under the new model established in this bill.

Fiscal Note, H.B. 236, 67th Leg., 1st Reg. Sess. (Idaho 2023).

In light of the above statements of purpose and fiscal note, there can be little question that the legislature intended the Office of the SPD, created by House Bill 236 (2023) and funded by House Bill 735aa (2022), to assume the costs of indigent public defense that were previously borne by the counties. However, if any doubt remains, it is put to rest by the following Statement of Purpose, which accompanied a 2024 bill to amend the SPD Act:

> Prior to establishment of the Office of the State Public Defender in 2023, counties were responsible to pay for representation for indigent individuals. *This legislation provides clarification that the Office of the State Public Defender now has responsibility to provide coverage and payment for representation for which counties had responsibility prior to the creation of the Office of the State Public*

*Defender, as well as any statutorily required coverage.* This bill also creates a fund to coordinate statewide payments for Guardian Ad Litem representation previously paid by individual counties. A separate account is necessary to ensure a delineation from any funds for representation of indigent individuals in other cases.

Statement of Purpose, S.B. 1367, 67th Leg., 2d Reg. Sess. (Idaho 2024) (emphasis added).

It is undisputed that, prior to October 1, 2024, Idaho's counties were responsible for the costs of appellate transcripts for indigent defendants. *See*, *e.g.*, I.C. § 1-1105(2). Consistent with our interpretation of the SPD Act as a whole, and section 19-6008(1) in particular, the legislature's most recent expression of intent makes clear that the financial obligation for those transcripts, as well as any other indigent defense costs that were previously covered by the counties, are now the responsibility of the SPD.

The SPD does not seriously contest that if—as we have held—the state is financially responsible for the costs of appeal transcripts in indigent defense cases, it is the SPD's obligation to pay for any transcripts requested in an initial notice of appeal filed by the SPD's Office on or after October 1, 2024. However, the SPD takes the position that the financial responsibility for any transcripts requested in an amended notice of appeal, an objection to the record, or a motion to augment filed by the SAPD after it is appointed lies with the SAPD. The SPD has not pointed to any statute or rule that imposes upon the SAPD any duty to pay transcript costs. Rather, the argument appears to be that the SPD should not have to pay the costs of transcripts requested by the SAPD on behalf of indigent defendants because the SPD currently does not have an adequate budget to cover those expenses.

We are cognizant of the SPD's budget constraints, but whether the SPD currently has funding to pay for appeal transcripts for indigent defendants is irrelevant to the question of whether it is statutorily obligated to do so. As we have explained, the plain language and legislative history of the SPD Act evidence the legislature's intent to require the SPD to assume all indigent defense costs that were previously paid for by the counties. And, logically, it only makes sense that the SPD is now responsible for the costs of appeal transcripts, no matter what stage of the appeal they are requested. Prior to October 1, 2024, the counties paid for the costs of preparing all appeal transcripts for indigent defendants; however, by operation of House Bill 735aa (2022) and the SPD Act, the counties' coffers have been reduced and the money previously used by counties to fund indigent defense has been transferred to the State Public Defense Fund for the benefit of the SPD.

For the foregoing reasons, we hold that the SPD is the state agency responsible for the costs of preparing transcripts on appeal for indigent defendants. This financial obligation applies to transcripts first requested in any documents filed on or after October 1, 2024, including any initial notices of appeal, any amended notices of appeal requesting additional transcripts, any motions to augment, and any objections to record filed on or after October 1, 2024.